34 P.3d 1085

**Robert J. ANDERSON and Pauline Anderson, husband and wife, Plaintiffs–Appellants,**

v.

**Steven B. LARSEN and Dixie Larsen, husband and wife, Defendants– Respondents.**

No. 26221.

Supreme Court of Idaho, Pocatello, September 2001 Term.

Oct. 24, 2001.

Meyers, Thomsen & Larson, PLLP, Soda Springs, for appellants. Bruce A. Larson argued.

Racine, Olson, Nye, Budge & Bailey, Pocatello, for respondents. Randall C. Budge argued.

WALTERS, Justice.

This case involves a claim to an easement by prescription. Robert and Pauline Anderson commenced an action against Steven and Dixie Larsen to establish a prescrip-tive easement across the Larsens' property. The district court, following a bench trial without a jury, found that the Andersons had failed to prove a continuous and uninterrupt-ed use of the alleged easement for the requi-site five-year period prior to filing the action. As a result, the district court entered judg-ment in favor of the Larsens and against the Andersons on the Andersons' claim. The district court also entered an order awarding attorney fees and costs to the Larsens as the prevailing party. The Andersons appeal. This Court affirms.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts found by the district court dis-close the following. Robert and Pauline Anderson and Steven and Dixie Larsen own adjacent properties in the city of Preston, Idaho. The Larsens purchased their proper-ty in 1982 from Mr. Larsen's parents, who originally had acquired the property in the 1950's. The Larsen property fronts on State Street along the western side of the lot. The Larsens own and operate a business on the lot, the Polar Bear Drive–In, with access to State Street. To the east behind the Polar Bear Drive–In, is a trailer house where Mr. Larsen's mother lives. Farther to the east past the trailer house, Andersons' property abuts the Larsen property. The Larsen property is bounded on the north and south by chain-link fences running from State Street to the Anderson property. There was at one time a dilapidated fence and gate between the adjoining Larsen and Anderson properties, which was removed by Mr. Anderson in 1993 or 1994.

The Andersons' property was acquired by Mr. Anderson's parents in 1948 as rental property. Mr. Anderson's parents eventual-ly moved into the house in 1973. Mr. Anderson's father died in 1978. In 1993, Mr. Anderson moved into the house to take care of his mother who also eventually passed away, in 1994. Mr. Anderson testified at trial that he began cleaning out the area behind the house at that time, removing trees and shrubs and using the Larsen prop-erty as a means of access to the Anderson backyard in order to haul refuse away. Al-

though Mr. Anderson's parents and sister actually owned the property until 1996 when Mr. Anderson purchased the property from his sister [1], there was no evidence presented to indicate that they traveled across the Larsen property. Rather, the evidence suggested only sporadic use of the Larsens' property by neighbors and other individuals and entities throughout the years. For instance, a neighbor employed by Mr. Anderson's parents to maintain their property, occasionally drove across the Larsen property to remove grass clippings, leaves, and other debris from the Anderson property during times approximately 1982 to 1999. The City of Preston and a public utility, Utah Power and Light Company, also occasionally crossed the Larsen property to access sewer drains and a power pole located at the rear of the Larsens' lot.

Mr. Anderson married appellant Pauline Anderson on November 24, 1995. Shortly thereafter, Mr. Anderson began parking his pickup behind the Anderson house. In 1995 and 1996, Mr. Anderson also constructed two carports behind the house where he could park his boat and trailer. Mr. Anderson began accessing the carports by driving through the Polar Bear parking lot and across the Larsen property. Mr. Anderson also spread gravel behind the Polar Bear parking lot in 1997 because, as Mr. Anderson later testified, the property behind the parking lot became muddy and slick in the winter.

The Larsens asserted that they had no knowledge as to when Mr. Anderson began to use their property to access his lot until they observed vehicle tracks behind the Polar Bear parking lot in the spring of 1996. In 1997, Anderson demanded that the Larsens' employees who worked at the Polar Bear Drive-In stop parking their vehicles in the area that Anderson was using for access to his property. The Larsens refused and, after several similar confrontations during which Mr. Anderson maintained that he had an easement across the Larsens' property, the Andersons filed this action in June, 1998, claiming an easement by prescription. A trial was held before the district court without a jury whereupon the district court denied the Andersons' prescriptive easement claim and entered judgment in favor of the Larsens. The crux of the district court's decision was that the Andersons had failed to show a continuous and uninterrupted use of the Larsen property for the five-year period required by I.C. § 5–203 to establish prescription. The district court also awarded attorney fees and costs to the Larsens as the prevailing party. The Andersons appeal from the district court's judgment.

## II. ISSUES

Three issues are presented on this appeal. First, the Andersons contend that the district court erred in concluding that they had not satisfied their burden to show, by clear and convincing evidence, a right to an easement by prescription. Second, the Andersons assert that the district court erred by awarding attorney fees to the Larsens. Third, in reply to the Andersons' appeal, the Larsens submit that the district court's decision should be affirmed and that they should receive an award for their attorney fees and costs incurred for responding to the Andersons' appeal.

## III. DISCUSSION

### A. STANDARD OF REVIEW

Appellate review of the lower court's decision is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. *See Baxter v. Craney,* 135 Idaho 166, 171, 16 P.3d 263, 269 (2000); *Conley v. Whittlesey,* 133 Idaho 265, 269, 985 P.2d 1127, 1131 (1999). A trial court's findings of fact in a bench trial will be liberally construed on appeal in favor of the judgment entered, in view of the trial court's role as trier of fact. *See Lindgren v. Martin,* 130 Idaho 854, 857, 949 P.2d 1061, 1064 (1997); *Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.,* 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990). It is the province of the district judge acting as

---

1. Anderson testified that the house was deeded to his sister in 1979 for inheritance tax purposes while his mother retained a life estate, and that after his mother's death in 1993 he continued to reside on the property under a lease arrangement with his sister, who lived in Salt Lake City, until he purchased the property from her in 1996.

trier of fact to weigh conflicting evidence and testimony and to judge the credibility of the witnesses. *See Abbott v. Nampa School Dist. No. 131,* 119 Idaho 544, 808 P.2d 1289 (1991); I.R.C.P. 52(a). Findings of fact that are based on substantial evidence, even if the evidence is conflicting, will not be overturned on appeal. *See Hunter v. Shields,* 131 Idaho 148, 953 P.2d 588 (1998). However, we exercise free review over the lower court's conclusions of law to determine whether the trial court correctly stated the applicable law, and whether the legal conclusions are sustained by the facts found. *See Whittlesey,* 133 Idaho at 269, 985 P.2d at 1131; *Burns v. Alderman,* 122 Idaho 749, 752–53, 838 P.2d 878, 881–82 (Ct.App.1992).

## B. Prescriptive Easement

 In order to establish a private prescriptive easement, a claimant must present reasonably clear and convincing proof of open, notorious, continuous, and uninterrupted use under a claim of right and with the knowledge of the owner of the servient tenement for the prescriptive period of five years. *See* I.C. § 5–203; *Baxter,* 135 Idaho at 172, 16 P.3d at 270; *West v. Smith,* 95 Idaho 550, 511 P.2d 1326 (1973). The purpose of the requirement that prescriptive use be open and notorious is to give the owner of the servient tenement knowledge and opportunity to assert his rights against the development of an easement by prescription. The open and notorious use must rise to the level reasonably expected to provide notice of the adverse use to a servient landowner maintaining a reasonable degree of supervision over his premises. *See Kaupp v. City of Hailey,* 110 Idaho 337, 340, 715 P.2d 1007, 1010 (Ct.App.1986).

 The Andersons argue that the district court erred by concluding that they did not show a continuous and uninterrupted use of the Larsen property for the required five-year period under I.C. § 5–203. The Andersons contend that undisputed evidence presented at trial shows a long established use of the Larsen property for access to a pasture located at the rear of the Andersons' property. The Andersons assert that although Mr. Anderson's parents did not begin residing in the home until 1973, they made continuous use of the pasture on the property since 1948 and during that time used the right of way across the Larsen property to access the back of their lot. The Andersons also assert that testimony at trial corroborates that the right of way was used continuously from 1973 until Mr. Anderson's mother's death in 1994.

The record, however, contains substantial and competent evidence showing that the Andersons' use of the Larsen property was not "continuous and uninterrupted" until after 1996 at the earliest, as found by the district court. There is evidence in this case further showing, as the district court found, that the Andersons' use of the Larsen property prior to 1996 was sporadic, periodic and inconsistent in frequency.

The only evidence implying that Larsen property was used for more than the removal of grass clippings or for utility repair or service was Mr. Anderson's testimony. For example, Mr. Anderson testified that that he frequently visited his parents from 1973 to 1993 and during that period used the Larsen property to access the rear of the Andersons property and for the removal of yard debris from the Andersons' lot. Mr. Anderson also testified that prior to moving into the home in 1973, his parents used the rear portion of their lot as a pasture and accessed the pasture through the Larsen property. The bulk of the evidence, however, supports the district court's conclusion to the contrary.

As the district court noted, prior to 1996, the evidence shows with respect to the Larsen property only intermittent use by anyone connected with the Anderson property, to dispose of yard waste, as well as occasional use to park a recreational vehicle or boat. Al Cissney and his grandson, who were neighbors employed by the Andersons to cut their grass from approximately 1982 to 1999, testified that the use of the Larsen property was for the occasional transportation of trash, leaves, and grass clippings during the summer. Mr. Cissney also testified that he had no recollection of the Andersons' vehicles passing through the Larsen property prior to 1996. This evidence is consistent with testimony from several other neighbors who also testified that they did not observe any use by

the Andersons of the Larsen property prior to 1996.

Indeed, the only evidence suggesting that the Andersons used the Larsen property was that of Mr. Anderson. The district court, however, found Mr. Anderson's testimony unpersuasive in light of the evidence to the contrary. Because it is the province of the district judge acting as trier of fact to weigh conflicting evidence and testimony and to judge the credibility of the witnesses, *see Crea v. Crea*, 135 Idaho 246, 249, 16 P.3d 922, 925 (2000), this Court will uphold the district court's conclusion.

 The district court also addressed the question of when the Larsens likely were put on notice of the use of their property by Anderson, which had the potential of ripening into a prescriptive easement. The district court found from the evidence that Larsens' actual knowledge of the Andersons' use of the pathway in question "began in 1996 at the earliest, but most probably in 1997." The judge noted that both of the Larsens had testified to that effect, and that any knowledge by the Larsens of the Andersons' use, which might have been imputed from Larsens' employees, began in 1996 when, as the employees testified, Mr. Anderson left a note on an employee's car. The court determined that Larsens most likely attained the requisite knowledge of the Andersons' use of the Larsens' property in 1997 when Anderson graveled "the pathway" and verbally asserted his claims during confrontations with the Larsens. We conclude that there is substantial and competent evidence in the record to support the district court's determination.

 The Andersons also argue that their use of the right of way should be combined with that of their predecessors to establish the requisite five-year period of adverse use. They claim that once a prescriptive easement is created, it becomes fixed as an appurtenance to the real property and may be claimed by a successor in interest. While this assertion is a correct statement of the law, the Andersons' argument is not well founded because like the Andersons, their predecessors in interest (Mr. Anderson's parents and his sister) did not establish continu-

ous and uninterrupted use of the claimed prescriptive easement.

 A claimant of a prescriptive easement may rely on the adverse use by the claimant's predecessor for the prescriptive period, or the claimant may combine such predecessor's use with the claimant's own use to establish the requisite five continuous years of adverse use. *Roberts v. Swim*, 117 Idaho 9, 13 n. 1, 784 P.2d 339, 343 n. 1 (Ct.App.1989); *see also Wood v. Hoglund*, 131 Idaho 700, 703, 963 P.2d 383, 386 (1998). Once the five-year period of adverse use has been attained, the prescriptive right to continue the use of the way has been established, *Burnett v. Jayo*, 119 Idaho 1009, 1012, 812 P.2d 316, 319 (Ct.App.1991), and there is no need to couple or to tack the use by the predecessor to any use by the claimant. When an easement of way by adverse use is thus created, it becomes fixed as an appurtenance to the real property, which is subject to the prescriptive use and may be claimed by a successor in interest. *Wood*, 131 Idaho at 703, 963 P.2d at 386; *Feldman v. Knapp*, 196 Or. 453, 250 P.2d 92, 103 (1952).

In this case, however, the use of the Larsen property for access to the Anderson property was limited to such sporadic and seasonal undertakings as the removal of grass cuttings and intermittent utility work. There is therefore an absence of evidence in the record to support a finding either that the Andersons' predecessors established a prescriptive easement for the purposes sought by Mr. Anderson, or that the Larsens were put on notice of the potential for such a prescriptive right prior to 1996, as determined by the district court from the evidence presented.

## C. ATTORNEY FEES AT TRIAL

 The district court awarded attorney fees to the Larsens as the prevailing party based upon I.C. § 12–121 because the court determined that the Andersons' action was "brought and pursued without foundation." The district judge noted that although the Andersons may have arguably demonstrated some of the prescribed elements for a prescriptive easement through the Larsen property, "it was clear that none of these ele-

408

ments continued through the required five (5) year period." The Andersons challenge the district court's decision, arguing that the district court failed to specifically discuss, as is required by I.R.C.P. 54(e), why the evidence the Andersons presented was insufficient to meet the standards under I.C. § 12–121.

We do not agree with the Andersons' position. The district court made extensive findings precisely as to why the award was made. After noting that I.C. § 12–121 allowed for the award of fees to the prevailing party and that the determination of the award was a discretionary call, the district court held:

> [I]t was not even a close call whether or not the Plaintiffs' alleged prescriptive use lasted for five (5) years. As the Court concluded in its Memorandum Decision and Order including Findings of Fact and Conclusions of Law, issued February 1, 2000, the Plaintiffs' alleged prescriptive use of the pathway in question did not begin until the summer of 1996 when Plaintiffs acquired ownership of their property in question. Plaintiffs filed this suit in June 1998, only two years later and far less than five (5) years as required by statute. The Plaintiffs knew or should have known of this deficiency in their case as is evidenced by a letter from Defendants' counsel to the Plaintiffs in early 1998. Furthermore, counsel for Plaintiffs knew or should have known the relative law [sic] to prescriptive easements and that five (5) years' prescriptive use was required to establish a prescriptive easement.
>
> As such, the Court concludes that this lawsuit was brought and pursued without foundation. Therefore, reasonable attorney fees are appropriate, and justice requires that the Plaintiffs bear the Defendants' cost of defending this lawsuit. It is utterly unfair to stick the Defendants with the costs of defending this suit when they did nothing wrong and were simply defending their property rights.

■ Appellate review of an award for attorney fees under I.C. § 12–121 at the trial level is conducted by applying the three-part test explained in *Sun Valley Shopping Center, Inc., v. Idaho Power Company,* 119 Idaho 87, 803 P.2d 993 (1991). The sequence of our inquiry is: (1) whether the trial court perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

These three criteria are clearly met in this case. The order awarding attorney fees to the Larsens is affirmed.

## D. ATTORNEY FEES ON APPEAL

■ Finally, we turn to the Larsens' claim that they should receive an award for the attorney fees incurred for responding to the Andersons' appeal. Their request is made under I.C. § 12–121. In this regard, this Court has observed: "Attorney fees are awardable if an appeal does no more than simply invite an appellate court to second-guess the trial court on conflicting evidence." *Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.,* 118 Idaho 116, 120, 794 P.2d 1389, 1393 (1990). Here, the Andersons essentially have asked this Court to reweigh and reevaluate the evidence, to second-guess the trial court's findings which were based on conflicting evidence, and to arrive at a different conclusion than the district court by reassessing the credibility of the various witnesses. This we will not do. Furthermore, the Andersons have not presented any reasonable legal argument demonstrating that the district court erred, on the facts presented, in its conclusion that the action was pursued prior to the expiration of the five years that are necessary, by statute, to establish a claim for an easement by prescription.

Accordingly, we conclude that this appeal has been pursued without foundation and that the Larsens should be awarded attorney fees on appeal.

## CONCLUSION

The judgment of the district court, including the award of attorney fees to the Larsens, is affirmed. Costs and attorney fees on appeal are awarded to the Larsens, to be determined pursuant to I.A.R. 40 and 41.

Chief Justice TROUT and Justices
SCHROEDER, KIDWELL and EISMANN,
concur.