IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 41277

| | | |
|---|---|---|
| H.F.L.P., LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, October 2014 Term |
| | ) | |
| v. | ) | 2014 Opinion No. 130 |
| | ) | |
| THE CITY OF TWIN FALLS, | ) | Filed: December 8, 2014 |
| | ) | |
| Defendant-Respondent. | ) | Stephen W. Kenyon, Clerk |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. G. Richard Bevan, District Judge.

District court decision regarding easement, affirmed.

Steven A. Wuthrich, PA, Montepelier, argued for appellant.

Wonderlich & Wakefield, Twin Falls, for respondent. Fritz A. Wonderlich argued.

_____

BURDICK, Chief Justice

This appeal arises from the Twin Falls County district court's decisions regarding the existence of an easement over property the City of Twin Falls ("the City") owns in the Snake River Canyon. At trial, H.F.L.P., LLC, ("H.F.L.P.") claimed it had a prescriptive easement and an easement by necessity over the property, but the district court ultimately entered judgment in favor of the City. H.F.L.P. argues on appeal that the district court: (1) did not have subject matter jurisdiction over the case; (2) erred when it held that H.F.L.P. failed to prove a prescriptive easement and an easement by necessity; and (3) erred when it admitted photographic overlays over H.F.L.P.'s objections at trial. We affirm.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This case involves a proposed easement over a rough, relatively unimproved, single-vehicle dirt road that travels over property the City owns in the Snake River Canyon, south of the Snake River. H.F.L.P. owns three parcels in the Snake River Canyon, west of Rock Creek:

1

"Harmsen Parcel 1," "Harmsen Parcel 2," and "Harmsen Parcel 3."[1] The City owns roughly twenty-seven parcels in the Snake River Canyon, beginning at the waste water treatment plant ("treatment plant") east of Rock Creek, and extending west of Rock Creek, just west of "Harmsen Parcel 2."

The road begins at the treatment plant and runs west/northwest, parallel to the Snake River and across property now owned almost entirely by the City. That property was previously owned by either the BLM, several unidentified owners, Carl Urie, Carl Urie's father and uncles, or several other of H.F.L.P.'s predecessors. Once the road reaches Rock Creek, it crosses the Rock Creek Bridge and travels across "Harmsen Parcel 3," through a parcel the City owns, to "Harmsen Parcel 2." The entire road is approximately five miles long. H.F.L.P. seeks to establish an easement over the length of the road because it owns property west of Rock Creek Bridge that is landlocked and useless without an easement; the Snake River borders H.F.L.P.'s land to the north, and canyon cliffs border the south and west.

H.F.L.P. acquired its parcels following a series of conveyances that trace back to Carl Urie and his siblings. Carl Urie's father owned property south of the Snake River and west of Rock Creek beginning in about the 1930's. Carl moved onto the property with his family in 1946, when he was two years old. The Uries had a trout farm on part of their property around the 1950's, and then a cattle business up to 1976. They also grew corn for silage on the property, although it is unclear which lot(s) were used for these activities. The Uries apparently used the road involved in this lawsuit as their exclusive access to their property.

At times, other people protested the Uries' right to use the road, but the Uries would talk them out of it, insisting they had to use the road and were allowed to do so. However, at trial it was unclear as to which part of the road was involved or which land owners participated in those conversations. At one point in the 1960's after the City took over the treatment plant, the Uries encountered a gate—which was on the southeast part of the treatment plant property—and they attempted to dismantle it. Thereafter, a man from the treatment plant stopped the Uries from dismantling the gate and provided them with a key to the gate. The Uries and their successors have had a key ever since then.

The Uries sold "Harmsen Parcel 1," "Harmsen Parcel 2," and "Harmsen Parcel 3" to Northern Hydro around 1992, and H.F.L.P. is a successor of Northern Hydro. Stephen Harmsen

---

[1] Harmsen Parcel 1 is not part of this lawsuit.

has an interest in H.F.L.P. and also had an interest in Northern Hydro. Harmsen and his employees used the subject road monthly, primarily for recreational purposes, ever since Northern Hydro acquired its properties from the Uries, but it is unclear which parts of which properties have been used. Harmsen has never been denied access to the road, and the City gave him keys when it put up a new gate at the treatment plant. At some point, Harmsen attempted to get a permit to start construction on H.F.L.P.'s property, but was informed he could not obtain a permit without a recorded easement due to the property's landlocked nature. Harmsen subsequently requested an easement over the City's properties, which the City refused.

Consequently, H.F.L.P. filed a complaint with the district court on October 27, 2011, seeking a declaration of easement over the City's properties east of Rock Creek. In that complaint, H.F.L.P. sought an easement by necessity, and, alternatively, a prescriptive easement. At trial however, H.F.L.P. conceded it could not prove unity of title with respect to the property east of Rock Creek, and as such, was no longer seeking an easement by necessity over that land. Instead, H.F.L.P. sought an easement by prescription over the land east of Rock Creek and an easement by necessity over land the City owns west of Rock Creek between "Harmsen Parcel 3" and "Harmsen Parcel 2." H.F.L.P. also pled a twenty-year statutory period for its prescriptive easement claim, but subsequently submitted a pre-trial memorandum asserting that in light of a recent decision from this Court, a five-year statutory period applied. H.F.L.P. also argued the five-year statutory period at trial.

Following a bench trial, the district court entered its June 18, 2013 Findings of Fact and Conclusions of Law. Preceding the findings, however, the court provided a special commentary on the lack of definitive proof presented at trial, where the court noted that its findings of fact were limited due to the manner in which H.F.L.P. presented its evidence. Specifically, the court noted that H.F.L.P. only had three witnesses testify at trial and that the testimony generally was not tied to any deeds, exhibits, or the chain of title summaries that were admitted into evidence. The court also discussed several evidentiary flaws. These flaws included that: (1) certain maps were scaled differently and inadequately labeled; (2) the legal description of the easement lacked particularized detail; and (3) the chain of title summaries were not in chronological order and did not follow one piece of property at a time. Essentially, the court stated, H.F.L.P.'s evidence was so fragmented that the court had limited proof and therefore could not determine what the facts established. The court acknowledged that the evidence H.F.L.P. submitted *may* have contained

information supporting its claims, but that "the court was in no position to ferret-out: (1) what that information is and (2) how it supported H.F.L.P.'s claims." Most significantly, the court emphasized that H.F.L.P.'s burden to prove its claims included an obligation to present evidence clearly and that it was not the court's "duty to sift through maps and unsystematic exhibits to organize and figure out the plaintiff's case."

The court then set forth its findings of fact and ultimately concluded that H.F.L.P. did not prove its prescriptive easement claim or its easement by necessity claim by clear and convincing evidence. As to the prescriptive easement claim, the district court found that H.F.L.P. failed to show that: (1) the use of the road was adverse and under a claim of right; (2) the use of the road was continuous and uninterrupted; and (3) the prescriptive elements were satisfied for the statutory period. With respect to the easement by necessity claim, the district court held that H.F.L.P. failed to prove unity of title of the parcels west of Rock Creek. The district court also determined it properly exercised subject matter jurisdiction over the case because H.F.L.P. did not show the United States claimed an interest in the subject property that would give the federal district courts exclusive jurisdiction over the case. H.F.L.P. timely appealed the district court's judgment.

## II. ISSUES ON APPEAL

1. Whether the district court had subject matter jurisdiction to decide easement rights over land the City of Twin Falls acquired from the BLM before this suit.

2. Whether substantial and competent evidence supports the district court's finding that H.F.L.P. did not establish all the elements of its prescriptive easement claim.

3. Whether substantial and competent evidence supports the district court's finding that H.F.L.P. did not establish an easement by necessity.

4. Whether the district court erred when it admitted aerial photographs of the property.

## III. ANALYSIS

H.F.L.P. appeals a number of the district court's decisions made during and after trial. These decisions include the district court determining it had subject matter jurisdiction over the case; finding H.F.L.P. failed to present sufficient evidence to establish its easement by necessity and prescriptive easement claims; and admitting certain evidence over H.F.L.P.'s hearsay objections at trial. Because the jurisdictional issue could be dispositive, we will address it first.

**A. The district court had subject matter jurisdiction over the case.**

4

H.F.L.P. argues the district court did not have subject matter jurisdiction over easement claims relating to land the BLM once owned. H.F.L.P. asserts that 28 U.S.C. § 1346(f) gives federal district courts exclusive jurisdiction over quiet title actions over land the United States claims an interest in. In other words, H.F.L.P. argues that because the BLM owned some of the land during the prescriptive period, federal courts have exclusive jurisdiction over the easement dispute, even though the BLM does not *currently* own or "claim an interest in" any of the land involved in this suit.

"Questions of jurisdiction must be addressed prior to reaching the merits of an appeal." *Bach v. Miller*, 144 Idaho 142, 144–45, 158 P.3d 305, 307–08 (2007). Whether the district court had subject matter jurisdiction is a question of law over which this Court exercises free review. *Id.* at 145, 158 P.3d at 308. Subject matter jurisdiction is "the power to determine cases over a general type or class of dispute." *Bagley v. Thomason*, 155 Idaho 193, 196, 307 P.3d 1219, 1222 (2013).

The Idaho Constitution grants the district courts original jurisdiction over all matters at law and in equity. Idaho Const. art. V, § 20. This includes jurisdiction to declare easement rights. *See, e.g.*, *Sinnett v. Werelus*, 83 Idaho 514, 365 P.2d 952 (1961). However, 28 U.S.C. § 1346(f) deprives state district courts of jurisdiction over easement claims where a party brings an action under 28 U.S.C. § 2409a to "quiet title to an estate or interest in real property in which an interest is claimed by the United States." 28 U.S.C. § 1346(f). For a federal court to exercise jurisdiction under 28 U.S.C. § 1346(f), the United States must claim an interest in the property at issue and title to real property must be disputed. *Robinson v. United States*, 586 F.3d 683, 686 (9th Cir. 2009). An easement dispute challenging the United States' interest will suffice, so long as the dispute actually challenges the federal government's title. *Id*. at 686, 688.

Thus, 28 U.S.C. § 1346(f) only applies where the United States claims a *current* interest in the property involved in the suit. For example, in *Kirk v. Schultz*, 63 Idaho 278, 119 P.2d 266, 269 (1941), this Court noted that in *Wilson v. Williams*, 87 P.2d 683 (N.M. 1939), plaintiff's use of a road over land the United States owned for 10 years before the defendant acquired title from the United States created a prescriptive right over the road that could be enforced against the *defendant*. (emphasis added). There, it was irrelevant that the United States owned the land during the prescriptive period: the right was enforced against the defendant, *not* the United States. Thus, if the United States does not claim a current interest in—and there is no dispute

5

over the United States' title to—the property involved in an easement claim, state courts can properly exercise subject matter jurisdiction over the claim.

The district court held that it properly exercised subject matter jurisdiction over H.F.L.P.'s easement claims because the United States did not own any of the property when the suit was brought and thus, 28 U.S.C. § 1346(f) did not apply. We agree. Here, H.F.L.P. lawsuit sought an easement against the City over land almost entirely owned by the City[2] at the time H.F.L.P. filed its suit. The United States was not named as a party to the action, and H.F.L.P. has not demonstrated that the United States "claims" an interest in any of the property the road traverses. H.F.L.P.'s brief does not direct this Court to any evidence in the record that shows the United States claims an interest in the land. Further, H.F.L.P.'s opening brief alleges that the City acquired the land from the BLM by an Act of Congress "just a little over a week before [this] lawsuit was filed." This statement undermines any argument H.F.L.P. makes regarding the district court's lack of subject matter jurisdiction over this suit. H.F.L.P. failed to demonstrate facts in the record that would give federal courts exclusive jurisdiction over the case, and we therefore hold that the district court properly exercised subject matter jurisdiction over the case.

## B. Substantial and competence evidence supports the district court's decision that H.F.L.P. failed to establish a prescriptive easement.

H.F.L.P. next argues the district court erred when it found H.F.L.P. failed to prove all the elements of its prescriptive easement claim. To establish an easement by prescription, a plaintiff must prove by clear and convincing evidence that use of the subject property is "(1) open and notorious, (2) continuous and uninterrupted, (3) adverse and under a claim of right, (4) with the actual or imputed knowledge of the owner of the servient tenement (5) for the statutory period of five years." *Hughes v. Fisher*, 142 Idaho 474, 480, 129 P.3d 1223, 1229 (2006).

A district court's decision that a plaintiff failed to establish a prescriptive easement involves entwined questions of law and fact. *Hodgins v. Sales*, 139 Idaho 225, 229, 76 P.3d 969, 973 (2003). When this Court reviews a lower court's decision, it determines whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law. *Anderson v. Larsen*, 136 Idaho 402, 405, 34 P.3d 1085, 1088 (2001). "Each element is essential to the claim, and the trial court must make findings relevant to each element in order to sustain a judgment on appeal." *Hodgins*, 139 Idaho at 229, 76 P.3d at 973. Consequently, it is the

---

[2] There is one small section owned by a private owner who was not a party to the lawsuit.

6

province of the district court to weigh conflicting evidence and testimony and to judge the witnesses' credibility. *Id.* Because the trial court is the trier of fact in a bench trial, this Court liberally construes the trial court's findings of fact on appeal in favor of the judgment entered. *Anderson*, 136 Idaho at 405, 34 P.3d at 1088. Therefore, findings of fact based on substantial and competent evidence will not be overturned on appeal even in the face of conflicting evidence. *Id.* Additionally, courts should closely scrutinize and limit rights obtained through prescription because prescription acts as a penalty against the servient land owner. *Gibbens v. Weisshaupt*, 98 Idaho 633, 638, 570 P.2d 870, 875 (1977). In other words, Idaho law disfavors private prescriptive easements. *Elder v. Nw. Timber Co.*, 101 Idaho 356, 358, 613 P.2d 367, 369 (1980).

After the bench trial, the district court found that H.F.L.P. proved the use of the road was open and notorious and that the owners of the servient properties had actual or imputed knowledge of that use. However, the court found that H.F.L.P. failed to prove that: (1) the use of the road was continuous and uninterrupted, (2) the use was adverse and under a claim of right, and (3) all the elements were satisfied for the statutory period. The district court also held that even if H.F.L.P. could prove all of the prescriptive easement elements, its claim would still fail because private individuals cannot obtain prescriptive easements against public property.

1. Prescriptive easement elements.

H.F.L.P. argues it put forth sufficient evidence to prove the use of the road was continuous and uninterrupted, adverse and under a claim of right, and the prescriptive elements were satisfied for the statutory period. Because the court used the same reasoning as a basis for its decision on both the continuous and uninterrupted element and the statutory period element, they will be discussed together.

a. *H.F.L.P. did not prove by clear and convincing evidence the continuous and uninterrupted element or the statutory period element.*

First, H.F.L.P. argues the district court erred when the court found the road use was not continuous and uninterrupted and that H.F.L.P. failed to establish that each element was satisfied for the statutory period. H.F.L.P. relies on Carl Urie's testimony at trial that his family used the road continuously between 1945 and 1986, and on the fact that this testimony was undisputed to argue that it proved the use of the road was continuous and uninterrupted. Further, H.F.L.P. argues that the district court erroneously focused on post-1961 events when it determined H.F.L.P. failed to prove these two elements. H.F.L.P. argues the appropriate timeframe was between the 1930's and 1984. H.F.L.P. asserts that by doing so, the district court either applied a

7

time period exceeding the applicable five year period or somehow ruled that H.F.L.P. abandoned the easement. Because abandonment was not raised as an affirmative defense in the pleadings and because there was no evidence in the record of any intent to abandon, H.F.L.P. argues that the district court erred to the extent it applied abandonment to determine the use was not continuous.

The district court did not rely on any sort of "abandonment theory" when it held H.F.L.P. failed to show continuous and uninterrupted use of the road. The district court focused heavily on the fact that H.F.L.P. failed to indicate the triggering date for the prescriptive easement. The court noted that the absence of a triggering date "create[d] a problem because the court does not know which date to reference to determine that all elements are satisfied and were satisfied for the statutory time period." It further noted that "without a proposed triggering date, neither the defendant nor the court can tell whether any statute of limitation may prohibit this action" or whether the easement was abandoned between 1986 and 1992, since H.F.L.P. provided no testimony regarding road use during that period. The court's statements merely illustrate the problems that arose because of H.F.L.P.'s failure to establish a date the easement was triggered, not that the district court adopted a twenty-year statutory period or that it ruled H.F.L.P. abandoned the easement.

The district court analyzed the facts and evidence presented and ultimately concluded that Carl Urie's testimony regarding use of the road from the 1930's until 1984 was insufficient to satisfy the continuous and uninterrupted element. The court reasoned that H.F.L.P. did not establish a specific triggering date such that the court could find continuous use for any given five-year period. For this same reason, the district court determined it had no way of ensuring the other elements were satisfied for the statutory five years. Without a specific triggering date, the court noted that it was left to guess which year H.F.L.P. believed the statutory period was satisfied and use it as a reference to ensure the other elements were satisfied for the statutory period. Therefore, the district court held that H.F.L.P. failed to prove by clear and convincing evidence the continuous and uninterrupted element and the statutory period element. We agree.

Carl Urie's testimony was the only evidence presented as to the road use during H.F.L.P.'s claimed prescriptive period. Significantly, Urie was at a young age during much of the period to which he testified. It is within the trial court's discretion to weigh witnesses' credibility, and since Urie was the only individual who testified as to the use of the road, the trial

8

court presumably took his age at the time of the alleged road use into account. For nearly every piece of testimony elicited from Urie to support the continuous use element, there was also testimony tending to weaken his testimony's persuasive effect.

Indeed, Urie testified that his family used the road from the 1930's until about 1984 and that it was the only vehicle access they had. However, Urie also testified that at one point there was an interstate bridge that his family used to access their property. Urie testified that his family had a trout farm on the property for approximately ten years and that his family used the road to take the trout to the freight office "probably at least once a week." However, Urie also testified that he would have been one year old when the trout farm started and that he had no personal knowledge of the trout farm; he just knew that when he was a child, there was a trout farm. Finally, Urie testified that the use of the road continued from the time he was a young child until he sold the property in 1992. However, Urie testified that he moved off of the property in early 1986, and there is no information in the record of how the Uries, or anyone else, used the road from 1986 until it was sold in 1992. Consequently, the district court determined there was no clear and convincing evidence that anyone used the road during those years.

As indicated above, Urie testified that at one point there was an interstate bridge that his family used to get out of the canyon. This could have interrupted the Uries' "continuous use." However, it is unclear when they used the bridge or for how long, which further complicates the analysis and makes it impossible to determine whether H.F.L.P. established the continuous use or statutory period elements. H.F.L.P. does not point to any additional evidence in the record, nor could this Court find any that clearly shows the use of the road was continuous or that the elements were satisfied for the prescriptive period. Without more testimony to corroborate Urie's testimony regarding his family's use of the road and without a specific triggering date, it is impossible to determine whether those elements were established. We therefore hold that substantial and competent evidence supports the district court's decision that H.F.L.P. failed to prove by clear and convincing evidence that the continuous and uninterrupted use and statutory period elements were satisfied.

> b. *H.F.L.P. did not prove by clear and convincing evidence the adverse and under a claim of right element.*

H.F.L.P. next argues that the road use was adverse and under a claim of right because Urie testified that: (1) his family's use of the road pre-1961 was under a claim of right and (2) when people disputed their right to use the road, the Uries "always insisted they had to use it and

9

were allowed to use it." H.F.L.P. contends that the fact the Uries were given a key to a gate on the road does not indicate permissive use. Instead, H.F.L.P. argues these facts merely demonstrate that landowners were recognizing the Uries had a vested property right in the road. H.F.L.P. points to testimony from the City's staff engineer, who testified that the City "[r]ecognized that that was an access to [H.F.L.P.'s] property and that we weren't going to restrict what historical access that [it] may have had." For these reasons, H.F.L.P. argues that the district court erred in determining the use was permissive rather than adverse. H.F.L.P. further argues that the court erred in determining there was a presumption of permissive use due to the unimproved nature of the lands. H.F.L.P. argues the presumption of permissive use should not apply because Carl Urie testified that there was a dairy farm on some of the land, as well as a barn, irrigation, and four homesteads, which demonstrates at least some of the land was occupied and improved during the prescriptive period. H.F.L.P. argues that the fact the road itself and the land bordering it was unimproved does not itself obviate the presumption of adverse use.

Under Idaho law, a prescriptive right cannot be obtained if the use of the servient estate is through the landowner's permission. *Wood v. Hoglund*, 131 Idaho 700, 702, 963 P.2d 383, 385 (1998). The general rule is that where no evidence is presented to establish how the use began, a presumption arises that the use was adverse and under a claim of right. *Gibbens*, 98 Idaho at 636, 570 P.2d at 873. However, if the servient estate is wild, unenclosed, or unimproved land, the presumption of adverse use does not apply; rather, permissive use is presumed. *Cox v. Cox*, 84 Idaho 513, 522, 373 P.2d 929, 934 (1962). Moreover, if the presumption of permissiveness applied when the use began, the presumption continues until a hostile and adverse use is clearly manifested and "brought home" to the servient property owner. *Backman v. Lawrence*, 147 Idaho 390, 398, 210 P.3d 75, 83 (2009); *Gameson v. Remer*, 96 Idaho 789, 792, 537 P.2d 631, 634 (1975).

As this Court has stated,

[t]he reason for the rule that a passageway over unenclosed and unimproved land is deemed to be permissive is sound and also easily understandable, * * *. It assumes that the owner of such land in many instances will not be in position to readily detect or prevent others from crossing over his land, and, even if he did, he might not enter any objection because of a desire to accommodate others and because such usage resulted in no immediate damage to him. Also in such instances the landowner would probably have no reason to think the users of the passageway were attempting to acquire any adverse rights. On the other hand there would be no reason or basis for such inference of permission on the part of

10

> the landowner if someone tore down his fence or destroyed his crops by reason of such usage. These acts alone would be calculated to put the landowner on notice that others were using his land adversely to his own interest and right of occupation.

*Cox*, 84 Idaho at 522, 373 P.2d at 934 (quoting *Fullenwider v. Kitchens*, 266 S.W.2d 281, 283 (Ark. 1954). Consequently, when a plaintiff claims a prescriptive easement over wild or unenclosed land, "mere use of the way for the required time is not generally sufficient to give rise to a presumption that the use is adverse." *Id.* Instead, the plaintiff must rebut the presumption of permissive use by putting forth sufficient evidence to show (1) that the use was actually adverse to the landowner and (2) that the landowner had notice of the adverse use: not merely that the landowner had notice of use in general.

The district court in this case held that the use of the road was permissive rather than adverse, and in doing so it relied on *Christle v. Scott*, 110 Idaho 829, 718 P.2d 1267 (Ct. App. 1989). In *Christle*, the defendant to a quiet title action claimed he had a prescriptive easement over a road on plaintiff's land in Idaho County. *Id.* at 830, 718 P.2d at 1268. The defendant's predecessors in interest possibly began using the road as early as the 1930's, but it was unclear exactly how and when the use began. *Id.* at 831, 718 P.2d at 1269. After conducting an on-site inspection of the land, the trial judge determined that the land was "unimproved, wild, and remote." *Id.* Consequently, the court held that without any other indication of how and when the use began, the presumption of permissive use over the wild and unimproved land applied. *Id.*

The Idaho Court of Appeals affirmed this holding, and noted that evidence from trial further supported finding that the use was permissive. *Id.* Specifically, the Court of Appeals pointed to the defendant's testimony that he originally thought there was a recorded easement across the plaintiff's land and that after he began using it he never thought he was using it in derogation of anyone's rights, trespassing on the property, or interfering with anyone else's use of the property. *Id.* Furthermore, the defendant's predecessor in interest testified that he had asked and received permission to use the road and that as far as he knew the agreement had been handed down. *Id.* A former tenant of plaintiff's property also testified that he assumed the defendant was permitted to use the road. *Id.* Finally, at one point, the tenant put a lock on the gate into the property to keep people out, but gave the defendant a key to the lock so he could continue using the road. *Id.* The Idaho Court of Appeals held that the foregoing was substantial

and competent evidence supporting the district court's finding that there was a presumption of permissive road use. *Id.*

The district court in this case found the facts in *Christle* were indistinguishable from the facts in this case. The district court reasoned that much like *Christle*, it was unclear in this case how and when the Uries began using the road, but the road traversed wild, unimproved, and unenclosed land, and the Uries were given a key to the gate at the treatment plant. Based on this, the district court found there was a presumption of permissiveness, which became a conclusion of law when supported by additional facts in the record. We agree.

   i. <u>The land was wild and unimproved.</u>

Substantial and competent evidence supports the finding that the land was wild and unimproved. First, the photographs admitted into evidence depict wild, undeveloped, and unimproved land. Trial testimony also supports this finding. For example, on cross-examination, the City handed two aerial photographs to Carl Urie, who identified the land in the photographs as that extending from the treatment plant west to the Rock Creek Bridge. Carl Urie affirmed the City's assertion that the property shown in the photographs was in its wild condition and also acknowledged that the road looked like it "ran through desert out there." Furthermore, H.F.L.P.'s land surveyor, who did the legal description for the easement, testified that the road was essentially two tire tracks and that sagebrush and rocks would scratch a person's vehicle if it got too close to either side of the road. Finally, the City's staff engineer, who was present during Carl Urie's testimony, testified that Urie's description of the road from the treatment plant to Rock Creek as being wild and unimproved was an accurate description of the land.

H.F.L.P. contends sufficient evidence indicated portions of the land were occupied and improved during the prescriptive period and points to Carl Urie's testimony that there was a dairy farm on some of the land, as well as four homesteads, and a barn and irrigation. However, there was no testimony as to which lot(s) contained the houses or other structures, and there was no indication which lot(s) were used for which activities. Moreover, Harmsen testified that three of the homesteads were west of Rock Creek. If that is the case, the homesteads are irrelevant to this issue, because the land west of Rock Creek is not included in the prescriptive easement claim. Here, H.F.L.P. has put forth no evidence that the dairy or any other improvement was located on the land involved in the prescriptive easement claim. Likewise, H.F.L.P. has failed to direct this Court to any evidence in the record that would prove the land was not wild and

12

unimproved. Therefore, substantial and competent evidence supports the district court's finding that the land was wild and unimproved and therefore correctly applied the presumption of permissive use.

        ii.    Evidence from trial indicates permissive use.

Evidence from trial further supports the district court's finding that the road use was permissive. In fact, when asked whether anyone ever disputed his family's right to use the road, Urie testified: "yeah. But we always talked them out of it. We always insisted we had to use it, that we were *allowed* to use it." (emphasis added). Further, Urie testified that one time in the early 1960's, a lock on the gate at the treatment plant prevented his family's access to their property and that his family, upon dismantling the gate, was stopped by a man who ran the treatment plant. Urie went on to testify that they argued for a bit, "but then [the man who ran the plant] *let us have a key to the gate. And in fact, he told us that the City had told him to let us use it.*" (emphasis added). Testimony further indicates that from that time forward, the Uries and their successors always had keys to the gate by the treatment plant. Furthermore, Harmsen testified that since owning the property, no one disputed his claim to use the road and that it was his understanding that he always had the right to use the road. Harmsen believed that the access road came with the property and that access was never an issue: the City never denied him access to his property.

Based on the foregoing, the district court found that the Uries' road use was permissive, and that the permissive use continued on through and including H.F.L.P.'s current use. H.F.L.P.'s argument that these facts merely show the landowners were recognizing vested property rights is unavailing because it was the province of the district court to decide what inferences to draw from the evidence. In fact, there is a complete lack of evidence in the record indicating adverse road use. Therefore, the district court did not err when it held H.F.L.P. failed to prove by clear and convincing evidence the road use was adverse and under a claim of right.

Because substantial and competent evidence supports the district court's findings as to the prescriptive easement elements, we hold that the district court did not err when it determined H.F.L.P. failed to prove its prescriptive easement claim.[3]

---

[3] In any event, H.F.L.P.'s prescriptive easement claim must fail because prescriptive easements cannot be obtained against public lands. *See Tyrolean Associates v. City of Ketchum*, 100 Idaho 703, 704, 604 P.2d 717, 718 (1979); *Hellerud v. Hauck*, 52 Idaho 226, 13 P.2d 1099 (1932); *United States v. California*, 332 U.S. 19, 40 (1947). As the district court in this case noted, "[t]he land in question over which the prescriptive easement is sought has been

13

**C. Easement by necessity.**

Next, H.F.L.P. argues the district court erred when it held H.F.L.P. failed to prove unity of title in its easement by necessity claim. The City argues that H.F.L.P.'s easement by necessity claim should be barred because H.F.L.P. seeks to assert the easement over land west of Rock Creek that was neither pled in the complaint nor argued at trial. The City argues that even if the claim is not barred, the district court correctly found H.F.L.P. failed to prove its easement by clear and convincing evidence. H.F.L.P. responds that the issue of an easement by necessity over land west of Rock Creek was tried by consent of the parties at trial. Additionally, it argues for the first time on appeal in its reply brief that the district court erred when it determined an easement by necessity must be proved by clear and convincing evidence. We will first address whether the easement by necessity claim was tried by consent.

1. H.F.L.P.'s easement by necessity claim was tried by implied consent.

Idaho Rule of Civil Procedure 15(b) provides that "[w]hen issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The purpose of Rule 15(b) is to allow courts to decide cases on the merits, rather than upon technical pleading requirements. *Hughes*, 142 Idaho at 483, 129 P.3d at 1232. Implied consent to an unpleaded issue is not established merely because evidence relevant to that issue was introduced without objection. *Id.* Rather, it must appear that the parties understood that the evidence at trial was aimed at the unpleaded issue. *Id.*

In its complaint, H.F.L.P. sought an easement by necessity over land east of Rock Creek. It does not appear H.F.L.P. sought an easement by necessity over land west of Rock Creek at that time. However, H.F.L.P. put forth evidence at trial for purposes of establishing an easement by necessity west of Rock Creek. Specifically, Harmsen testified that there was no unity of title over land east of Rock Creek, but that there was unity of title over land west of Rock Creek and that he sought an easement by necessity over that land. From the testimony, the City should have understood the evidence was being aimed at the unpleaded issue of an easement by necessity over its land west of Rock Creek. There is nothing in the record showing the City objected to trying the issue at trial, and because there are no post-trial briefs in the record before this Court, it is impossible to tell whether the City objected to trying the issue post-trial. Furthermore, the

---

public land for as long as the court knows based on the information provided by H.F.L.P." Because a prescriptive easement cannot be obtained against public land, H.F.L.P.'s claim must fail regardless of whether it proved all of the prescriptive easement elements.

district court made findings of fact and conclusions of law on the issue. We therefore conclude that the easement by necessity over the land west of Rock Creek was tried by implied consent.

2. <u>This Court declines to address H.F.L.P.'s argument that the clear and convincing evidentiary standard should not apply to easement by necessity claims because H.F.L.P. raised the issue for the first time in its reply brief.</u>

The district court's decision adopted and imposed a clear and convincing standard of proof for H.F.L.P.'s easement by necessity claim. H.F.L.P. did not did not argue in its opening brief that the district court erred in adopting this clear and convincing standard. However, H.F.L.P. subsequently raised the issue for the first time in its reply brief.

For this Court to consider an issue, the appellant must identify legal issues and provide authorities supporting the arguments in its opening brief. I.A.R. 35. "A reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief." *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005). "Consequently, this court will not consider arguments raised for the first time in the appellant's reply brief." *Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 508, 95 P.3d 977, 990 (2004). Because H.F.L.P. did not challenge the district court's decision to impose a clear and convincing standard in its opening brief, H.F.L.P. has not properly raised it as an issue on appeal and we therefore decline to address it.

3. <u>Whether H.F.L.P. proved unity of title.</u>

H.F.L.P. argues that the district court erred in finding that H.F.L.P. failed to prove unity of title. H.F.L.P. argues it put forth sufficient evidence proving unity of title for the property west of Rock Creek. However, H.F.L.P. supports its argument only with Carl Urie's testimony that "[m]y dad and three, three of my uncles originally homesteaded all that property from the city sewage treatment plant to two miles west of Rock Creek and there were four homes, homesteads all together, and my father acquired all four of them sometime in the 1930's."

This Court reviews factual findings made after a bench trial for clear error. *Coward v. Hadley*, 150 Idaho 282, 286, 246 P.3d 391, 395 (2010) (citing I.R.C.P. 52(a)). Where substantial and competent evidence supports findings of fact, they will not be disturbed on appeal, even if there is conflicting evidence. *Backman*, 147 Idaho at 394, 210 P.3d at 79. Substantial evidence is that which a reasonable trier of fact would accept and rely upon it in determining findings of fact. *Id.* This Court exercises free review over the district court's conclusions of law. *Id.*

The district court found that H.F.L.P.'s evidence did not establish unity of title. The district court acknowledged that unity of title *may* have existed at some point, but that H.F.L.P. did not present evidence in an articulate way that would allow the court to conclude unity of title ever existed. Specifically, the evidence was "insufficient to establish that Carl Urie's father owned all of the lots in question at a single moment in time, and that the lots his father owned were geographically adjacent." The court noted in its special commentary that Urie testified only "generally about land that he claimed once belonged to his family," and that the testimony did not provide the court with the particularized detail that would allow it to make definitive findings for the specific parcels in question. It noted that Carl Urie's testimony was not tied to specific parcels, deeds, or the chain of title "summaries" in the record. It also noted that H.F.L.P. did not link the deeds it admitted to the properties in any way, leaving the court with little information to sync the deeds with the maps. The court also pointed out that the easement road's legal description failed to mention specific lots and indicate who owned the lots, so the court could not accurately evaluate the easement claims in terms of unity of title or ownership history.

Most significantly, the district court noted that the chain of title summaries were difficult to follow because they did not run chronologically, nor did they follow one piece of property at a time. Even if the summaries were understandable, the court reasoned, H.F.L.P. provided no direction as to how the lots associated with the maps and the road it claimed an easement over. The court went on to state:

> For example, for an easement by necessity . . . H.F.L.P. must show unity of title. H.F.L.P. claims that Carl Urie's father owned all of the land involved. However, no map is shown giving the court an indication as to which lots to look for—such as, "Carl's father owned lots 28, 30, 33, and 35 of section 14" coupled with a map that shows lots 28, 30, 33, and 35 so the court can verify that those lots are adjacent. There is also no reference that multiple lots were owned at the same time.

Essentially, H.F.L.P. submitted many maps, deeds, and chain of title summaries without connecting any dots for the court. Finally, the court noted that H.F.L.P. referenced various exhibits to show Carl Urie's father had unity of title, but those exhibits contained names with no indication of who they were and did not indicate how, if at all, the individuals were related to the Uries or to the unity of title claim.

H.F.L.P. does not point to any evidence in the record to contradict the district court's findings, nor does it cite to any evidence aside from Carl Urie's testimony that his father and

uncles homesteaded all the property east of the wastewater treatment plant to two miles west of Rock Creek to prove unity of title. Urie testified that there were four homesteads all together and that his father acquired all four of them sometime in the 1930's. However, none of his uncles or successors in interest testified at trial, and it is unclear from the record who owned what parcels and when because H.F.L.P. did not tie any of the testimony to specific legal descriptions or to any of the deeds that were admitted into evidence. Although it appears that one exhibit indicates that Urie previously owned the City's property west of Rock Creek, it is not clear when Urie—or his father—owned the land for purposes of determining unity of title. Furthermore, there was no testimony indicating which lots the road travels over once it crosses the Rock Creek Bridge, making it difficult to determine which land required unity of title. Finally, although Urie testified that at one time he owned parcels 1, 2, and 3 on Exhibits 16A and 16B, it is unclear if Urie was referring to the property labeled "Harmsen Parcel" 1, 2, and 3; or "City of Twin Falls" 1, 2, and 3. Based on the foregoing, we hold that substantial and competent evidence supports the district court's finding that H.F.L.P. failed to prove unity of title. Consequently, the district court did not err in holding H.F.L.P. failed to prove its easement by necessity claim.

## D. The district court's evidentiary ruling.

H.F.L.P. argues the district court abused its discretion when it admitted Exhibits B-1 and B-2—two aerial photographs of the property in Snake River Canyon, overlaid with parcel property lines—over H.F.L.P.'s objections at trial.[4] As a preliminary matter, H.F.L.P. objected to the admission of Exhibits B-1 and B-2 (the "overlays") before they were even offered into evidence while the City was laying foundation for them.[5] The City only moved to admit the overlays after H.F.L.P. conducted voir dire and then objected to the two overlays being admitted. The district court admitted the overlays without providing a reason for doing so. H.F.L.P. argues on appeal that the district court erred when it admitted the overlays because they were inadmissible hearsay not within an exception.

This Court disregards errors made on evidentiary rulings unless the rulings were a manifest abuse of the trial court's discretion and affected the party's substantial rights. *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 51, 995 P.2d 816, 821 (1999). Indeed, I.R.E. 103(a)

---

[4] H.F.L.P.'s own witness, Carl Urie, testified to these same two exhibits earlier in the trial during the City's cross-examination of Urie without H.F.L.P. objecting to the testimony.

[5] The district court allowed H.F.L.P. to conduct voir dire in aid of objection before the City even offered the two exhibits into evidence. Better practice would be to allow voir dire in aid of an evidentiary objection only after the exhibit is actually offered into evidence to be sure the proponent was finished laying its foundation.

provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Similarly, I.R.C.P. 61 provides that "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Furthermore, issues on appeal are not considered unless they are properly supported by both authority and argument. *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 16, 175 P.3d 172, 178 (2007). Because an appellant can only prevail if the claimed error affected a substantial right, the appellant must present some argument that a substantial right was implicated. *Hurtado v. Land O'Lakes, Inc.*, 153 Idaho 13, 18, 278 P.3d 415, 420 (2012). Thus, "when appealing from an evidentiary ruling reviewed for abuse of discretion, the appellant must demonstrate *both* the trial court's abuse of discretion and that the error affected a substantial right." *Id.* This Court has held that a party's failure to present some argument as to how the evidentiary ruling affected a substantial right is fatal to its evidentiary challenge and the Court deems the issue waived. *Id.* (declining to consider appellant's claims that the district court erred when it admitted expert testimony because appellant failed to argue on appeal that the error affected a substantial right); *Akers v. D.L. White Const., Inc.*, 156 Idaho 37, 320 P.3d 428, 436 (2014) ("[I]f the appellant does not present argument that the court's error affected a substantial right, the issue is waived.").

H.F.L.P. does not argue on appeal that the district court's evidentiary ruling affected a substantial right. In fact, the only argument it presents in its brief is that the district court erred in admitting the overlays. It does not elaborate as to how that error affected H.F.L.P.'s substantial rights, let alone provide any authority or argument that demonstrates such. Consequently, we hold that H.F.L.P. waived the issue.

### IV. CONCLUSION

We hold that (1) the district court properly exercised subject matter jurisdiction over the easement claims; (2) substantial and competent evidence supports the district court's findings that H.F.L.P. failed to prove by clear and convincing evidence both its easement by prescription claim and its easement by necessity claim; and (3) H.F.L.P. waived its challenge to the admission of the photographic overlays into evidence because H.F.L.P. did not argue on appeal that admitting the overlays into evidence affected a substantial right. Therefore, we affirm the district court. Costs to the City.

Justices EISMANN, J. JONES, HORTON and WALTERS, J., Pro tem, **CONCUR.**

18