# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 48156

HOWARD D. FROST, an individual, and
SHARON BRUNO, an individual,

    Plaintiffs-Counterdefendants-
    Appellants-Cross Respondents,

v.

DANA PAUL GILBERT and ELISA
GILBERT, Husband and Wife,

    Defendants-Counterclaimants-
    Respondents,

and

ALFRED ALFORD, an individual,

    Defendant-Counterclaimant-
    Respondent-Cross Appellant,

and

JOHN and JANE DOES 1 through 10, persons
claiming an interest in real property in Gem
County, described herein,

    Defendants.

Boise, June 2021 Term

Opinion Filed: September 2, 2021

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Third Judicial District, State of Idaho, Gem County. George A. Southworth, District Judge.

The judgment of the district court is <u>affirmed</u>.

Pickens Law, P.A., Boise, for appellants, Howard Frost and Sharon Bruno. Terri Pickens Manweiler argued.

Dindinger & Kohler, PLLC, Boise, for respondents, Paul & Elisa Gilbert. Edward W. Dindinger argued.

Angstman Johnson, Boise, for respondent Alfred Alford. Branden M. Huckstep argued.

---

1

STEGNER, Justice.

This is an appeal from a bench trial on claims brought by Sharon Bruno (Bruno) and her father, Howard Frost (Frost). Frost died during the pendency of this litigation. As a result, unless context is important, the Appellants Frost and Bruno will simply be referred to as Bruno. Bruno and Frost filed this action seeking to quiet title to an express easement, pursuing quiet title for an easement by prescription, and requesting an injunction against two other nearby property owners. The gravamen of the suit was to establish an easement for irrigation hand lines and piping as well as to ensure access to irrigation equipment. The hand lines had been in place since the early 1980s. They originated at a pump near the Payette River and crossed an adjacent property now owned by Dana Gilbert and Elisa Gilbert (the Gilberts) before reaching Bruno's property. Bruno also contended that the way she and her father accessed the pump since its installation in 1981 was over a driveway on what is now the Gilberts' property, as well as a switchback on adjacent property now owned by Alfred Alford (Alford).

The Gilberts counterclaimed alleging trespass and slander of title. They also sought a declaratory judgment to extinguish the express easement which had been in effect since 2011. Alford also counterclaimed alleging trespass and seeking a declaratory judgment that Bruno had no interest in his property for purposes of accessing the pump. Bruno unsuccessfully moved for summary judgment and for a preliminary injunction. The claims were bifurcated, with the easement-related claims to be tried first before a judge, and the trespass claims to follow before a jury. At the close of the first trial, the district court found that the express easement clearly allowed Bruno ingress and egress along the legal description of the easement; however, the district court rejected the requested prescriptive easement across the Gilberts' driveway and the switchback on Alford's property. The district court found that any use of these roads had been permissive and therefore did not satisfy the requirements for a prescriptive easement. Accordingly, the district court dismissed Bruno's prescriptive easement-related claims. After unsuccessfully moving for reconsideration, Bruno moved the district court to enter a 54(b) certificate to enable an immediate appeal, which was granted. Bruno timely appealed. For the reasons set out below, we affirm the district court's decision.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual Background

This case is centered on an express easement granted to Frost in 2011 for irrigation hand lines running from a pump in the Payette River in Gem County, Idaho, across the Gilberts' property and then terminating at Frost's property. However, this 2011 grant of easement occurred only after mediation of another property dispute which arose in 2010. The 2010 suit was initiated by Frost against (among others) the Gilberts' predecessor in interest, Jack Harney (Harney), in an attempt to resolve a boundary line dispute. This property dispute was resolved when Harney quitclaimed the disputed portion of property to Frost, and the parties entered into a grant of easement confirming Frost's irrigation easement.

This current case, however, involves both the express easement and Bruno's asserted right to use a particular road over the Gilberts' and Alford's properties for ingress to and egress from the pump at the river. The factual background to this case will be divided into four sections: (1) the history of the affected properties in this case, (2) boundary disputes and the express grant of easement to Frost in 2011, (3) the agreement between several parties and the Shelley Acres Homeowner's Association (the Shelley Acres HOA), and (4) the events in 2017 and 2018 giving rise to this litigation.

### 1. The history of the affected properties.

A map of the three properties as of a May 2009 Record of Survey is included below, indicating the boundaries of the properties as of that date. *See infra* Figure 1. As shown, three parcels of land sit side-by-side on the Payette River in Gem County, Idaho, just south of Sweet, Idaho. To the north is State Highway 52, and to the south is the river. Bruno co-owns the easternmost property with the estate of her father, Frost. The Gilberts own the middle property marked "HARNEY PROPERTY" on the map, having purchased it from the Harney Family Trust, and Alford owns the property to the west of the Gilberts' property. However, this 2009 Record of Survey does not reflect two subsequent transactions: (1) the relocation of an existing utility easement originally granted by Alford's predecessor-in-interest to the Shelley Acres HOA which is located north of Highway 52, and (2) the Gilberts' 2016 acquisition of an additional strip of property owned by Alford's predecessor-in-interest.



**Figure 1. May 2009 Record of Survey.**

Before 1975, all the properties involved in this dispute were owned by either George and Lucille McDonough (the McDonoughs) or the Canyon Canal Company (which was succeeded in interest by the Emmett Irrigation District at some undefined point).

On April 4, 1975, the McDonoughs conveyed 13.4459 acres of land to Fred Charters and his wife, Mary Jean (collectively, the Charters). In two conveyances in 1977, the McDonoughs conveyed three pieces of land to the east of the Charters' property to Robert and Cathy Sisk (the Sisks). A small portion of the property conveyed to the Sisks had already been conveyed to the Charters in 1975, but the Charters did not record this deed until *after* the Sisks had recorded their 1977 deed, creating an overlap in property conveyances that would eventually be the basis for the 2010 litigation.

In January 1980, the McDonoughs and Sisks conveyed 1.25 acres to the United States Department of the Interior. This land is now owned and managed by the U.S. Bureau of Reclamation.

On November 23, 1981, the Sisks conveyed 5.82 acres to Frost. This conveyance included the "overlap property" on the east side of the Charters' property. At the time Frost took possession of the 5.82 acres, the Charters owned the property immediately to the west.

To supplement their respective incomes, Frost and Charters grew "grass hay" on their properties, which required irrigation. Before selling the property to the Frosts, the Sisks had

4

applied for water rights with the Idaho Department of Water Resources, which were provisionally granted. Frost testified that he purchased all the materials necessary to irrigate the property and installed the irrigation pump himself, placing it on property owned by the Bureau of Reclamation. Frost testified that the pump's location was selected at Charters' request, because Charters did not want power lines running across the back of his property to power a pump on Frost's property. Instead, Charters requested that Frost install the pump next to several other pumps on the Bureau of Reclamation-owned land to the south of Charters' property. Frost's irrigation hand lines began directly north of the pump and crossed onto Charters' property before turning east and finally reaching Frost's property.

Frost testified that at the time he installed the pump, the only way to access the riverfront was through an unimproved road running from Montour Road to Charters' property. Frost further testified that sometime between installation of the pump in 1981 and the mid-1980s, Idaho Power approached Charters, asking him to cut a switchback down the back of his property to the pumps. According to Frost, Idaho Power would use the unimproved road from Montour Road to access the pumps, but that the Idaho Power workers had been shot at on one occasion. Frost stated that he and Charters built the switchback together. According to Frost, upon completion, he used the switchback exclusively to reach the pump, either through Charters' driveway or through a gate between their properties.

By 1999, Charters had died, and the representative of his estate—his daughter Donna Thornton (Thornton)—split the property into two parcels. Thornton conveyed the eastern parcel to Jack Harney (Harney) on November 5, 1999.

On December 21, 1999, Thornton (acting with power of attorney for her mother, and as representative of her father's estate) entered into an irrigation easement agreement with the Shelley Acres HOA,[1] replacing a prior easement agreement from the 1960s, "for the limited and express purpose of such vehicle and pedestrian access as is necessary to replace, repair and maintain irrigation lines, irrigation pump, electrical service to such pump and related apparatus necessary to irrigate [the Shelley Acres HOA's] property."

Shortly thereafter, Thornton conveyed the western parcel to Michael Baker (Baker). Bruno testified that to her recollection, Baker never developed the western parcel or farmed it

---

[1] The Shelley Acres Subdivision is across State Highway 52 to the north of the properties at issue in this case. The subdivision draws irrigation water from a private pump in the river and conveys it through underground pipes across what is now the Alford property, under State Highway 52, to the subdivision.

5

while he owned it. After this conveyance, the three properties—Baker's to the west, Harney's in the middle, and Frost's to the east—were substantially in the same form as they are today with the exception of the overlap property and subsequent addition to the middle property.

2. <u>2010 boundary dispute lawsuit; express grant of easement to Frost in 2011.</u>

In 2008, the Emmett Irrigation District quitclaimed approximately 5 acres to Harney. The quitclaimed property lay directly south of Harney's property, and a portion of Frost's irrigation hand lines crossed this property on the way down the riverbank to Frost's pump.

By early 2009, Harney had died, and Vinita Shaul (acting as personal representative of Harney's estate) conveyed Harney's property to four individuals, who in turn conveyed their interests in the property to the Harney Family Trust. This property included the small portion of property that overlapped with Frost's.

In April 2009, the Emmett Irrigation District quitclaimed its interest in the property directly south of Frost's parcel to Frost. Around the same time, the Emmett Irrigation District quitclaimed property directly south of Baker's parcel to the Bakers. After these conveyances, the Emmett Irrigation District no longer retained any interest in the land directly south of the parcels owned by the Bakers, the Harney Family Trust, or Frost, and the pumps remained installed on Bureau of Reclamation property.

Around this time, Frost and his daughter, Bruno, became aware of problems with the legal descriptions of the properties previously conveyed, i.e., the "overlap" property conveyed to both the Charters and the Sisks in the 1970s (and subsequently Frost).

To resolve the boundary dispute, Frost filed an action for quiet title and declaratory judgment on May 4, 2010, against (among others) the estate of McDonough, the Harney Family Trust, and the Emmett Irrigation District. The parties attended mandatory mediation and reached a resolution of the suit. On March 13, 2011, the Harney Family Trust quitclaimed the overlapping portion of property which included 0.462 of an acre to Frost.

In addition, the Harney Family Trust conveyed to Frost an easement over the Harney property for Frost's irrigation hand lines. The easement was described as follows:

> A 10.00 foot irrigation water line easement over and across a portion of Government Lot 2 of Section 15, Township 7 North, Range 1 East, Boise Meridian, Gem County, Idaho, lying 5.00 feet each side of the following described centerline:

> [legal description]

6

. . .

This easement is for the purpose of ingress and egress to, and for the maintenance and repair of, an existing irrigation pipeline owned by the Grantee within the easement.

The easement also granted the Harney Family Trust and its successors the right to bury Frost's irrigation hand lines, at the Harney Family Trust's expense, so long as water delivery would not be impeded.

Bruno testified that to get to the pump, she continued to use the switchback over the Baker property even after the easement was granted, acknowledging that she would sometimes walk down the Harney driveway or drive down an adjacent utility easement to the switchback if the Harney gate was closed.

3. The Shelley Acres HOA easement; Baker Road improvements; and the 2017 easement access agreement between Alford and the Shelley Acres HOA.

At some point between 1999 and the 2010 lawsuit, the Shelley Acres HOA cut a road along its easement down to the switchback and pumps. This road was cut over the Baker property and the parties refer to this easement alternately as the "Baker Road" or the "Idaho Power easement" (as the Idaho Power utility poles follow this route). In the process of creating this road, the switchback access between the Harney property (middle) and the Baker property (westernmost) was rendered impassable by vehicle due to piles of dirt and ditches. The Shelley Acres HOA has subsequently used Baker Road to access its pump.

Bruno testified that after the resolution of the 2010 lawsuit, the gate to the Harney driveway was locked. She explained that she believed this to be a temporary measure meant to block access by the Shelley Acres HOA. She testified that thereafter, she and her son would use the "new access," i.e., Baker Road. However, she also stated she would use the Harney driveway by foot, even when the Harney gate was locked.

On September 13, 2011, the Harney Family Trust sold the Harney property to the Gilberts. The acreage of this property was about 4.5 acres, and sometime in 2014 the Gilberts purchased an additional 0.6 of an acre from Baker—the westernmost property owner—which brought the Gilberts' total property to 5.1 acres.[2]

After being diagnosed with cancer, Baker sought to sell as much of his property to the Gilberts as possible. As a result, Baker sold his property to the Gilberts and a local couple, Ray

---

[2] This conveyance is not in the record.

7

Peterson and Michelle Larsen in October 2015. In July 2016, Peterson, Larsen, and Gilbert quitclaimed 1.2 acres of the Baker acquisition to the Gilberts alone, with the rest going to Peterson and Larsen. The Gilberts' parcel was now approximately 6.3 acres and included the land between the former western boundary and Baker Road. Peterson and Larsen retained the westernmost property.

Sometime after taking possession of the former Baker property, Peterson altered Baker Road with a bulldozer, attempting to regrade the lower end of the property to build a house on it. Dana Gilbert testified that he used Baker Road and the switchback to access his pump until these alterations. He also testified that he had advance notice of Peterson's roadwork in 2016, and that he offered to move Frost's hand lines out of the way to avoid damage to them from the regrading. According to Gilbert, Frost asked him to instead place the hand lines onto a trailer and bring them up to Frost's property. Gilbert obliged. Bruno testified that she and Frost did not irrigate during the 2016 season.

As a result of Peterson's road work, the connection between Baker Road and the switchback was only accessible with four-wheelers or a four-wheel drive vehicle. To maintain access to his pump and irrigation lines after the bulldozer's alterations to Baker Road, Gilbert built a footpath from the bottom of his property to the switchback.

On September 21, 2017, Peterson and Larsen conveyed their property to Alford. However, before the sale to Alford could be finalized, the Shelley Acres HOA expressed concern that its easement had been effectively destroyed as a result of Peterson's regrading of the lower end of the property. Representatives of the Shelley Acres HOA met with Peterson, Larsen, and Alford, and entered into an agreement modifying the location of the Shelley Acres HOA easement and fixing the grade and radius of the easement to accommodate a utility truck and a 10-foot trailer. The agreement was entered into on October 10, 2017.

4. The events of 2017 and 2018 giving rise to this litigation.

After purchasing the westernmost property from Peterson and Larsen, Alford set about finishing the improvements and regrading Baker Road to the specifications in the Shelley Acres HOA agreement. Alford testified that he was nearly done regrading Baker Road when Bruno or her son tried to use the road. Alford testified that around this time he told Bruno that he did not want her to use Baker Road, but that if she gave him sufficient notice, he could pen his horses and she could come onto the property.

8

According to the Idaho Department of Water Resources, Frost used no water in either the 2016 or 2017 season. As the 2018 irrigation season started, Bruno learned from Dana Gilbert that her father's hand lines were no longer in place.

On June 22, 2018, Bruno and her son had a conversation with Dana Gilbert and Alford on the Gilberts' property. Bruno sent the Gilberts a letter dated June 28, 2018, demanding that her father's pump be turned on and the pipes restored.

Gilbert gave permission for Bruno and her son Darius Lange (Lange) to come onto his property to reinstall the hand lines. In late June and early July 2018, the hand lines were reinstalled. Bruno and her son brought the hand lines down Gilbert's driveway, parked their trailer at the top where the footpath started, and installed them, although Bruno and Lange testified that this process was hindered by the significant amount of fill that had been placed on the now-regraded hill.

Counsel for Bruno sent a letter to the Gilberts dated July 31, 2018, again restating the existence of the easement for the irrigation hand lines and asserting historical use of the Gilberts' driveway to access the pumps from Highway 52. On August 6, 2018, counsel for the Gilberts responded to the letters, noting that Baker Road was the subject of an easement agreement between Alford and the Shelley Acres HOA. The letter also recognized that Bruno had an express easement but that this easement did not extend all the way to the river. The letter stated that beyond the express easement, Bruno had no right (prescriptive, express, or otherwise) to cross the Gilberts' or Alford's properties to access the pump.

On August 22, 2018, Bruno, Lange, and a watermaster walked down the Gilberts' driveway toward the switchback and Frost's pump; Dana Gilbert confronted the group and ordered them from his property. When Bruno and Lange refused to leave, Gilbert called 911. According to Gilbert, Bruno produced a copy of the express easement and a 2009 survey which showed Baker Road (labeled "Irrigation Access Road") and the previous iteration of the switchback, and argued that the easement included access over the Gilberts' driveway or Baker Road. The Gem County Sheriff's Office suggested the parties handle the dispute in the civil court system.

Thereafter, Gilbert obtained an updated survey of his property's boundaries, and placed a "No Trespassing" sign where Bruno's hand lines reached the end of the express easement.

9

### B. Procedural History.

1. Complaint, counterclaims, preliminary injunction motion, and summary judgment motions.

On September 27, 2018, Frost and Bruno filed an action for declaratory judgment and quiet title, naming the Gilberts and Alford as defendants. Frost and Bruno sought a declaratory judgment to have the easement affirmed, and a prescriptive easement decreed over the Gilberts' driveway and the switchback on Alford's property.[3] Frost and Bruno also sought injunctive relief to keep the Gilberts and Alford from blocking access of this path or hindering their ability to maintain and access the hand lines. Frost and Bruno also sought damages caused by the Gilberts' and Alford's actions, and attorney fees associated with filing suit.

The Gilberts answered on October 23, 2018. In addition to asserting several affirmative defenses, the Gilberts counterclaimed for trespass and slander of title, and requested a declaratory judgment to extinguish Frost and Bruno's easement, arguing that the intent and purpose of Frost and Bruno's easement had been rendered impossible. Frost and Bruno answered the counterclaim on October 31, 2018.

Alford answered and counterclaimed on November 29, 2018. Like the Gilberts, Alford counterclaimed for civil trespass, and requested a declaratory judgment determining that Frost and Bruno had no right or interest in the use of Alford's property or his driveway. Frost and Bruno answered the counterclaim on December 10, 2018.

Frost and Bruno moved for summary judgment on March 4, 2019. The motion was accompanied by declarations of Bruno and her counsel. In relevant part, Bruno argued that there was no genuine issue of material fact that the express easement existed, and that the method of ingress to and egress from the pump had already been established over the Gilberts' driveway at the time of the 2011 easement. Bruno also contended that there was no genuine issue of material

---

[3] Missing from Frost and Bruno's complaint is a claim for a prescriptive easement for anything other than the driveway on the Gilberts' property and the switchback located on Alford's property. Notwithstanding this omission, the district court included language in its findings of fact and conclusions of law that purported to grant a prescriptive easement to Frost and Bruno involving a "strip of land" over the Gilberts' property. However, the Second Amended Judgment (the final judgment entered by the district court) which was prepared and submitted by the attorney for Frost and Bruno stated: "Plaintiffs' claim for quiet title for an easement by prescription against Defendants is dismissed[.]" There was some argument submitted by Frost and Bruno that a prescriptive easement was being sought which involved *Alford's* property. In reviewing Frost and Bruno's briefing, they never sought a prescriptive easement over a "strip of land" owned by the Gilberts. Consequently, there is nothing to suggest a prescriptive easement over the Gilberts' "strip of land" was an issue tried either as a result of the pleadings or by express or implied consent. Because this decision of the district court has not been appealed, it is now the law of the case.

10

fact that she and her father had established a prescriptive easement over the Irrigation Access Road. Bruno additionally argued she and her father were entitled to a prescriptive easement over a portion of Alford's property where the irrigation pipes are currently located.[4]

Alford opposed and moved to strike Bruno's declaration, arguing that she had made inadmissible statements not based on personal knowledge. Bruno responded, arguing that her personal knowledge arose from her involvement with the 2010 boundary dispute lawsuit and with her father's farming in the last several decades. Bruno also moved the district court to take judicial notice of the complaint and accompanying exhibits in the 2010 lawsuit. The Gilberts also opposed Bruno's summary judgment motion and accompanied their motion with a declaration from Dana Gilbert. The summary judgment motion was set for hearing, but this was vacated pursuant to a joint motion to compel mediation.

Mediation proved to be unsuccessful. Bruno moved the district court for a preliminary injunction on June 26, 2019, asking that the Gilberts and Alford be enjoined from interfering with access to the pipes and the pump during the action. This motion was heard July 8, 2019, and was denied July 15, 2019.

Bruno then moved the district court to view the property prior to the hearing on summary judgment. This request was granted. The hearing on summary judgment was held August 12, 2019. The next day, the district court issued a decision partially granting summary judgment on the Gilberts' counterclaim of slander of title and denying summary judgment as to all other claims.

Bruno moved for partial summary judgment on October 10, 2019, on the counterclaims of trespass. After the Gilberts and Alford opposed the motion, a hearing was held on December 9, 2019. This hearing was followed by the district court's decision on December 19, 2019, denying the motion.

An order bifurcating the claims was entered December 13, 2019. The equitable claims were set for bench trial February 11 and 12, 2020, and the remaining trespass claims would be submitted to a jury if necessary.

---

[4] Frost and Bruno argued in their briefing before the district court that they were entitled to a prescriptive easement over Alford's property for both the switchback and where the pipes purportedly lie on Alford's property. However, Alford argued—and the district court found—that neither the pump nor the pipes lie on Alford's property. This finding by the district court has not been challenged on appeal.

2. Trial and the district court's decision on the equitable claims.

A bench trial was held on February 11 and 12, 2020, on the issues related to the existence and location of Bruno's easement. The district court entered its memorandum decision and order on April 10, 2020.

The district court first addressed the express easement. The district court found that the 2011 easement was clear and unambiguous, fixing the location of ingress and egress as legally described, and without "any language for pump access, access roads, or boundaries beyond the dimensions."

The district court then turned to the claim for a prescriptive easement over the Alford and Gilberts' driveways. The district court found that any use of the "Irrigation Access Road," i.e., Baker Road, or the Gilberts' driveway had been permissive. The district court observed that while it would be more convenient for Bruno to walk down her neighbors' driveways, Bruno had other ways to access her pump:

> She could clear the brush and build her own road or path down the river as her neighbors have; she could move her pump or install a new one with remote technology; or she can continue to access the pump via Montour Road, as she and her son testified they have in the past.

The district court denied Bruno's request for injunctive relief. The district court further denied the Gilberts' request to extinguish Bruno's express hand line easement.

3. Attorney fees and costs.

The Gilberts moved for costs and attorney fees citing Idaho Rule of Civil Procedure (IRCP) 54(e)(1), Idaho Code sections 12-120(1)–(2) and 12-121. Alford followed suit, asserting the same bases for costs and fees.

Frost and Bruno moved to disallow both requests for costs and fees, accompanying these motions with a declaration from counsel. In response to the Gilberts' request for attorney fees, Frost and Bruno argued primarily that the claims of trespass were left for resolution by a jury and that the Gilberts had not prevailed. Bruno also argued that Idaho Code section 12-120 did not apply. Frost and Bruno argued that their claims were not frivolous such that the Gilberts would be entitled to attorney fees under Idaho Code section 12-121. Finally, Frost and Bruno challenged the Gilberts' requested fees as unreasonable and excessive. Frost and Bruno asserted the same arguments in their motion to disallow attorney fees and costs for Alford.

Ultimately, the district court denied the Gilberts' and Alford's requests for fees; however, the district court awarded Gilbert and Alford their costs.

4. Reconsideration.

Bruno moved for reconsideration on May 6, 2020, and accompanied this motion with a memorandum and a declaration from Lange. Bruno argued that the district court should have addressed whether she was entitled to a prescriptive easement over the switchback on the Alford property. Bruno set forth the facts—some clarified by Lange in his accompanying declaration— supporting her claim for a prescriptive easement.

The Gilberts opposed the motion, contending that Bruno failed to prove continuous, adverse historical use of the switchback. The Gilberts asserted that no clarification was needed because the district court made clear how Bruno was to access her pipes and pump. The Gilberts finally argued that to the extent that they did not "contest" Bruno's vehicle access until 2018, it was because Bruno and Lange had not used the property or claimed a right to do so until that year.

Alford also opposed Bruno's motion for reconsideration, first moving to strike Lange's declaration because he lacked personal knowledge, his assertions lacked foundation, and his declaration included arguments and facts not supported by cited materials. In opposing Bruno's motion for reconsideration, Alford contended in part that Bruno had raised the issue of access to her pipes over the *Alford* property for the first time. Alford also challenged Bruno's claim for a prescriptive easement over his property, arguing that Frost's testimony was clear that any use of the switchback was permissive.

Bruno responded to Alford's motion to strike, arguing that Lange's declaration met the requirements of all applicable rules relating to personal knowledge and foundation.

Bruno then filed a reply in support of her motion for reconsideration, arguing that her request for clarification with respect to access over the switchback was not a "new" issue. Bruno also argued that Lange's declaration assisted in establishing the changes to the topography of access for the pipes and to the pumps. Bruno finally argued that all the elements for prescriptive easement had been met for the switchback.

5. Order on reconsideration, attorney fees, and costs.

A hearing on the motion for reconsideration was held June 8, 2020, after which the district court took the motions under advisement. The district court then issued an order denying

13

Bruno's motion for reconsideration. The district court reiterated that Bruno had failed to meet her burden establishing a prescriptive easement over the switchback on the Alford property because use of the switchback had been permissive when Charters owned what would later become the Gilberts' and Alford's properties. The district court concluded that the evidence did not "clearly and convincingly allow the [c]ourt to define the scope of any prescriptive right[.]" The district court did not rule on Alford's motion to strike Lange's declaration.

After a subsequent hearing and further briefing on attorney fees and costs, the district court entered an order, denying an award of attorney fees to both Alford and the Gilberts. The district court did grant costs to both Alford and the Gilberts in the amount of $2,091.07 and $1,000.60, respectively.

Partial judgment was entered on the equitable claims and costs for Alford and the Gilberts. Bruno moved for and obtained a Rule 54(b) certificate from which an appeal could be taken. Subsequently, Bruno timely appealed. Alford timely cross-appealed.

## II.    STANDARD OF REVIEW

> Following a bench trial, this Court will not set aside a trial court's findings of fact unless they are clearly erroneous. *Turcott v. Estate of Bates*, 165 Idaho 183, 188, 443 P.3d 197, 202 (2019); I.R.C.P. 52(a)(7). "In determining whether a finding is clearly erroneous this Court does not weigh the evidence as the district court did," but instead "inquires whether the findings of fact are supported by substantial and competent evidence." *Id.* "Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact had been proven." *Id.* "Findings of fact that are supported by substantial and competent evidence are not clearly erroneous—even in the face of conflicting evidence in the record." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). "However, this Court exercises free review over the district judge's conclusions of law." *Turcott*, 165 Idaho at 188, 443 P.3d at 202.
>
> "[W]hen reviewing a trial court's decision to grant or deny a motion for reconsideration, this Court utilizes the same standard of review used by the lower court in deciding the motion for reconsideration." *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012). "An award of attorney fees and costs is within the discretion of the trial court and subject to an abuse of discretion standard of review." *Dickinson Frozen Foods, Inc. v. J.R. Simplot Co.*, 164 Idaho 669, 676, 434 P.3d 1275, 1282 (2019)[.]

*Kenworth Sales Co. v. Skinner Trucking, Inc.*, 165 Idaho 938, 942–43, 454 P.3d 580, 584–85 (2019).

"A district court's decision that a plaintiff failed to establish a prescriptive easement involves entwined questions of law and fact." *H.F.L.P., LLC v. City of Twin Falls*, 157 Idaho

14

672, 679, 339 P.3d 557, 564 (2014) (citing *Hodgins v. Sales*, 139 Idaho 225, 229, 76 P.3d 969, 973 (2003)).

"The determination of prevailing party status is committed to the sound discretion of the district court and will not be disturbed absent an abuse of that discretion." *Jorgensen v. Coppedge*, 148 Idaho 536, 538, 224 P.3d 1125, 1127 (2010) (citing *Shore v. Peterson*, 146 Idaho 903, 915, 204 P.3d 1114, 1126 (2009)).

### III.   ANALYSIS

**A. We affirm the district court's determination that the 2011 grant of easement was unambiguous and did not give Bruno the right to use the Gilberts' driveway to access her pump.**

The district court found that the express easement was clear and unambiguous, and that the easement fixed the location for Bruno's irrigation hand lines. The district court noted that the purpose of the express easement was for "ingress [to] and egress [from], and for the maintenance and repair of, an existing irrigation pipeline owned by [Bruno] within the easement." The district court concluded that the easement "does not contain any language for pump access, access roads, or boundaries beyond the dimensions," and declined "to expand the easement beyond its clear and unambiguous intent."

On appeal, Bruno argues that the district court erred in interpreting the express easement without the intent of the parties as to its location. Bruno contends that at the time of the grant of easement in 2011, "the method of ingress and egress had already been established as over the Gilbert driveway, through the Alford property on the switchback, and to the pumps along the Payette River." Bruno relies on the May 2009 survey, showing the "Irrigation Road Easement" crossing the then-Harney property before switching back on the adjacent parcel (then owned by the Bakers). Bruno argues that "the Gilberts had actual knowledge of the Grant of Easement and the Record of Survey, an express easement exists, and the scope claimed by Appellants should be confirmed by this Court." Bruno cites *Quinn v. Stone*, 75 Idaho 243, 270 P.2d 825 (1954), characterizing its holding as "even though an easement is not described with particularity in a reservation or deed, the easement is still valid, and should be placed in a reasonable location." Bruno assigns error to the district court in "failing to give weight to the intention of the parties and the circumstances in existence at the time of the grant."

The Gilberts argue that Bruno's reading of the grant of easement is flawed because it renders the instrument internally inconsistent and contradicts Bruno's own testimony about the

15

negotiation in 2011. The Gilberts argue that the interpretation is also inconsistent with the standard conventions of the English language, rendering "purpose" and "easement" in the instrument meaningless. The Gilberts distinguish *Quinn* by noting that here, the easement location *is* particularly described at a definitely fixed location.

Bruno counters, arguing that the Gilberts' argument makes the historical use of the Gilberts' driveway "all but forgotten[,]" in light of the topography of the properties. Bruno asserts that although the path for the hand lines was fixed, the grant of easement "does not inform on the path for ingress and egress to get to the pipes."

> This Court has previously held that when it
>
> interprets or construes a deed, "the primary goal is to seek and give effect to the real intention of the parties." *Porter v. Bassett*, 146 Idaho 399, 404, 195 P.3d 1212, 1217 (2008) (quoting *Benninger v. Derifield*, 142 Idaho 486, 489, 129 P.3d 1235, 1238 (2006)). If the deed is ambiguous, the trier of fact must "determine the intent of the parties according to the language of the conveyance and the circumstances surrounding the transaction." *Id.* (citing *Neider v. Shaw*, 138 Idaho 503, 508, 65 P.3d 525, 530 (2003)). However, "[i]f the language of a deed is plain and unambiguous, the intention of the parties must be ascertained from the deed itself and extrinsic evidence is not admissible." *Benninger*, 142 Idaho at 489, 129 P.3d at 1238 (citing *Simons v. Simons*, 134 Idaho 824, 11 P.3d 20 (2000)). "Ambiguity may be found where the language of the deed is subject to conflicting interpretations." *Read v. Harvey*, 141 Idaho 497, 499, 112 P.3d 785, 787 (2005) (citing *Neider*, 138 Idaho at 508, 65 P.3d at 530).

*Machado v. Ryan*, 153 Idaho 212, 218, 280 P.3d 715, 721 (2012).

As a preliminary matter, the district court found that the 2011 grant of easement was clear and unambiguous. Although Bruno has not clearly attacked this determination, she argues that the district court should have given weight to extrinsic evidence—i.e., the historical use of the driveway, the 2009 survey showing an "Irrigation Access Easement" over the Gilberts' property (Figure 1, *supra*), and the topography of the properties. Assuming Bruno has attacked the district court's conclusion that the grant of easement is unambiguous, we conclude that the district court did not err in this conclusion. The 2011 grant of easement expressly identifies the land subject to the easement and expresses intent as to its purpose and location. *See Hodgins*, 139 Idaho at 233, 76 P.3d at 977 ("At a minimum, a valid easement must identify the land subject to the easement and express the intent of the parties."). The grant of easement states: "This easement is for the purpose of ingress and egress to, and for the maintenance and repair of, an existing irrigation pipeline owned by the Grantee [Bruno and Frost] within the easement." There is no language in

the grant of easement about pump access, much less language subject to an alternative interpretation allowing for use of the Gilberts' driveway. The grant of easement contains no language referring to the 2009 survey, much less language susceptible to an interpretation that the "Irrigation Access Road" was the intended means of ingress and egress, despite Bruno's argument to the contrary.

Further, Bruno's reliance on *Quinn v. Stone* is misplaced. At issue in *Quinn* was an easement for a not-yet-constructed irrigation ditch which clearly identified the dominant and servient estates, specified the direction in which the ditch was to run, but did not describe its actual location or dimensions because it had not yet been constructed. *See Quinn*, 75 Idaho at 246, 270 P.2d at 826 (1954). Though the *Quinn* Court did not frame its analysis in terms of ambiguity, it is clear that from the face of the easement in that case, there was significant uncertainty as to what was actually being conveyed; therefore, there was ambiguity. *See Benninger*, 142 Idaho at 489, 129 P.3d at 1238 ("Uncertainties should be treated as ambiguities; such ambiguities are subject to be cleared up by resort to the intention of the parties as gathered from the deed, from the circumstances attending and leading up to its execution, from the subject matter, and from the situation of the parties at the time.").

Because the easement is unambiguous, extrinsic evidence is inappropriate in interpreting the easement. *See Benninger*, 142 Idaho at 489, 129 P.3d at 1238 (quoting *Simons*, 134 Idaho at 828, 11 P.3d at 24) ("If the language of a deed is plain and unambiguous, the intention of the parties must be ascertained from the deed itself and extrinsic evidence is not admissible."). The district court did not err in relying solely on the language of the grant of easement, and not on the historical use of a more convenient method of accessing the pipes and the pump.

## B. Substantial and competent evidence supports the district court's determination that Bruno did not establish a prescriptive easement over the Gilberts' driveway.

The district court found that Bruno failed to establish a prescriptive easement to use the Gilberts' driveway. The district court concluded this by finding that any past use of the Gilberts' driveway—and the switchback over Alford's property—was permissive, reasoning:

> Although Frost may have accessed his pump down the Gilbert driveway in the past, no one testified that it was without permission until 2018, when Gilbert and Alford both expressly revoked permission. Proving the existence of a prescriptive easement is a high burden, and Bruno failed to meet it. Alford and Gilbert testified at trial that any [past use] of their property by Frost was with permission, and continued until the relationships soured.

17

On appeal, Bruno argues that all the elements for a prescriptive easement over the Gilberts' driveway were met. In particular, Bruno argues that the district court ignored the presumption from *Gibbens v. Weisshaupt*, 98 Idaho 633, 636–37, 570 P.2d 870, 873 (1977), that "proof of open, notorious, continuous, uninterrupted use of the claimed right for the prescriptive period, without evidence as to how the use began[,] raises the presumption that the use was adverse and under claim of right." Bruno argues that the evidence at trial established use of the Gilberts' driveway dating back to the 1980s, permission was never asked, and that access was never denied until 2018. Bruno also cites *Stecklein v. Montgomery*, 98 Idaho 671, 674, 570 P.2d 1359, 1362 (1977), contending that their upkeep of the hand lines and pump is analogous to road maintenance indicating continuous and uninterrupted use. Bruno reasons that the "Irrigation Access Road" as marked on the 2009 survey was also actual notice to the Gilberts of the use of the driveway. *See* Figure 1, *supra*. Bruno argues that the district court disregarded "credible, unimpeached, and uncontroverted testimony establishing a prescriptive easement claim."

The Gilberts argue that Bruno's evidence did not establish continuous and uninterrupted use for the statutory period. The Gilberts contend that the evidence establishes that Bruno and Frost "varied their route of access" to the pipes and pump. The Gilberts also challenge Bruno's reliance on *Gibbens*, contending that the "presumption" is insufficient because there is in fact evidence of the beginning of the use.

Bruno responds, citing several cases as examples where limited permission did not defeat claims for a prescriptive easement. In particular, Bruno cites *Marshall v. Blair*, 130 Idaho 684, 946 P.2d 984 (Ct. App. 1996), *aff'd in part, rev'd in part by Marshall v. Blair*, 130 Idaho 675, 946 P.2d 975 (1997), where limited permission for a specific use was granted in writing, but according to the district court did not rise to the level of general permission to rebut the presumption of adverse use. Bruno also attacks the district court's view of the evidence, contending that the district court never found that Frost's, Bruno's, or Lange's testimony was not credible. Bruno reiterates that the district court erred in failing to apply the presumption of adverse use.

> To establish an easement by prescription, a plaintiff must prove by clear and convincing evidence that use of the subject property is "(1) open and notorious, (2) continuous and uninterrupted, (3) adverse and under a claim of right, (4) with the actual or imputed knowledge of the owner of the servient tenement (5) for the statutory period of five years."

*H.F.L.P., LLC*, 157 Idaho at 679, 339 P.3d at 564 (quoting *Hughes v. Fisher*, 142 Idaho 474, 480, 129 P.3d 1223, 1229 (2006)).

"The general rule is that proof of open, notorious, continuous, uninterrupted use of the claimed right for the prescriptive period, without evidence as to how the use began[,] raises the presumption that the use was adverse and under claim of right." *Gibbens*, 98 Idaho at 636, 570 P.2d at 873. If this presumption applies, "[p]roof of all of these elements shifts the burden to the owner of the servient estate, who must demonstrate that the claimant's use was permissive." *Marshall*, 130 Idaho at 680, 946 P.2d at 980 (citation omitted). "[A] prescriptive right cannot be obtained if the use of the servient tenement is by permission of its owner, because the use, by definition, was not adverse to the rights of the owner." *Id.* Further,

> courts should closely scrutinize and limit rights obtained through prescription because prescription acts as a penalty against the servient land owner. [*Gibbens*, 98 Idaho at 638, 570 P.2d at 875.] In other words, Idaho law disfavors private prescriptive easements. *Elder v. Nw. Timber Co.*, 101 Idaho 356, 358, 613 P.2d 367, 369 (1980).

*H.F.L.P., LLC*, 157 Idaho at 679, 339 P.3d at 564.

We disagree with Bruno's assertion that the presumption of adverse use applies under these facts. Moreover, we are not persuaded by Bruno's argument that use of the Gilberts' driveway was not permissive. Although Bruno testified that she and her father never asked or were granted permission to use the driveway in the years before the Gilberts took possession of the property, Frost testified otherwise. He was asked during cross-examination, "Okay. Is it fair to say that any use you made of Charters' property at that time was with his permission because you guys were working together?" To this question he answered, "Well, sure, yes." Frost was the only witness available to testify about the historical use of the Gilberts' driveway, and he confirmed that the use had been permissive. "[T]his Court liberally construes the [district] court's findings of fact on appeal in favor of the judgment entered." *H.F.L.P., LLC*, 157 Idaho at 679, 339 P.3d at 564. A claimant is required to prove adverse use by clear and convincing evidence. *Id.* We conclude that there is substantial and competent evidence to support the district court's conclusion that Bruno did not meet her burden below.

**C. We affirm the district court's determination that Bruno did not prove a prescriptive easement over the switchback on Alford's property.**

The district court's initial decision did not address the switchback over what is now Alford's property. In moving for reconsideration, Bruno asked the district court to clarify its

analysis and to rule specifically about the switchback, arguing that the district court's decision left no indication how she was to access the pump from Montour Road. In its decision denying Bruno's motion for reconsideration, the district court wrote:

> The Court [heard] testimony that after the pump was installed in 1981, Plaintiffs accessed the pump via Montour Road. A few years after installing the pump, Frost's neighbor at the time, Fred Charters, cut a road to the river over his property with Frost's help. According to Frost's testimony, Charter owned all of the property now held by Gilbert and Alford, and Frost used the road with his permission.

The district court went on to repeat that "any historical use of an access road or driveway was with either express or implied permission." Accordingly, the district court denied Bruno's motion for reconsideration.

On appeal, Bruno argues that the district court's decision regarding any right to the switchback should be reversed because the switchback was not built on *Charters'* property, but over canal company property. Bruno contends that all of the evidence adduced at trial supports a clear and convincing finding that a prescriptive easement was established over what is now Alford's property.

Alford responds, arguing that the other elements of Bruno's prescriptive easement claim have not been established. Alford also argues the district court's finding that the switchback was built over Charters' property and relies on Frost's testimony to argue that any use of the switchback was permissive. Alford also contends that even if the switchback were built over the irrigation district property, case law precludes the establishment of prescriptive easements over publicly owned property, citing *Hellerud v. Hauck*, 52 Idaho 226, 13 P.2d 1099 (1932).

Bruno counters, maintaining that at the time the switchback was constructed and use began, Charters did not own the property and therefore did not have the ability to grant permission to use it. Bruno argues that construction of the switchback put the Emmett Irrigation District on constructive notice, at a minimum, of the claim of right.

> To establish an easement by prescription, a plaintiff must prove by clear and convincing evidence that use of the subject property is "(1) open and notorious, (2) continuous and uninterrupted, (3) adverse and under a claim of right, (4) with the actual or imputed knowledge of the owner of the servient tenement (5) for the statutory period of five years."

*H.F.L.P., LLC*, 157 Idaho at 679, 339 P.3d at 564 (quoting *Hughes*, 142 Idaho at 480, 129 P.3d at 1229). "The open and notorious use must rise to the level reasonably expected to provide

20

notice of the adverse use to a servient landowner maintaining a reasonable degree of supervision over his premises." *Anderson v. Larsen*, 136 Idaho 402, 406, 34 P.3d 1085, 1089 (2001) (citing *Kaupp v. City of Hailey*, 110 Idaho 337, 340, 715 P.2d 1007, 1010 (Ct. App. 1986)).

As a preliminary matter, we recognize it is unclear whether the district court took into account Bruno's assertions that the switchback was arguably constructed over property actually owned by the Emmett Irrigation District (or the Canyon Canal Company, depending on who held title at the time). The district court placed weight on Frost's testimony that the road cut down to the pump was on Charters' property and that Frost's presence on that property was with Charters' permission. However, it is impossible from this record to determine the effect of irrigation district ownership on Frost's claim for a prescriptive easement. We recognize that the Emmett Irrigation District quitclaimed its interest to the respective landowners, but the dimensions and location of the irrigation district's interest, if any, is unknown.

Moreover, even if a portion of the switchback were built over property owned by the Emmett Irrigation District, we are persuaded that this property would fall under the rule we recently restated: "[P]rescriptive easements cannot be obtained against public lands." *H.F.L.P., LLC,* 157 Idaho at 683, 339 P.3d at 568. We have long held that irrigation districts are quasi-public municipal corporations which own property in trust for landowners within their jurisdiction. *See Lewiston Orchards Irr. Dist. v. Gilmore*, 53 Idaho 377, 23 P.2d 720, 722 (1933); *Robinson v. Lemp*, 29 Idaho 661, 161 P. 1024, 1026 (1916) ("[T]itle to property held by a municipality for public use, such as for streets, parks, public building sites, etc., cannot be acquired by adverse possession, but the opposite rule prevails where the property is held by it for other than a public use."). The irrigation district property was held for public use and could not be the subject of a prescriptive easement. *See also* 2 C.J.S. *Adverse Possession* § 20. Accordingly, we affirm the district court's finding that a prescriptive easement had not been proved. To the extent that the switchback was built over Charters' property, Frost testified that his use was permissive. To the extent the switchback was built over irrigation district property, a prescriptive easement could not have been obtained.

**D. This Court declines to address Bruno's argument about the civil trespass counterclaims against her, because the district court did not certify that issue as a final judgment under IRCP 54(b), and specifically excluded the remaining claims from the judgment.**

Bruno moved for partial summary judgment against the Gilberts and Alford on their trespass counterclaims against her. Bruno contended that before August 21, 2018, she could not have known that she was trespassing, and that the Gilberts could not establish that she committed a trespass knowingly or with reason to know. Bruno also argued that she was present on Alford's property openly and peaceably, without knowledge that entering would be a trespass, and that she did not return after Alford ordered her from the property.

The district court denied Bruno's motion at the summary judgment hearing, stating:

> First of all, there's issues of whether or not it was a trespass or whether or not there's an easement that was done. Those issues need to be decided first before a jury can even determine if there was a trespass.

> But there appear[] to be significant issues with regard to this matter. Generally the intent of an individual, if it's going to be a defense, is always an issue of fact for a jury to decide. And on that basis, this [c]ourt believes there [are] no grounds. It would be inappropriate to grant summary judgment on the trespass issue at this time.

The case was then bifurcated, with the equitable claims to be heard at the bench trial and the legal claims (trespass) to be resolved by a jury.

On appeal, Bruno argues that summary judgment was appropriate on the trespass claims "because no matter how the [d]istrict [c]ourt ruled on the easement claims, Gilbert and Alford's trespass claims failed, and still fail." Bruno argues that if an easement (express or prescriptive) is found, the trespass claim would fail because presence on the property would be with "permission" as recognized in Idaho Code section 6-202(7)(a)(iii). Alford and the Gilberts primarily contend that the district court's partial summary judgment order was not certified for interlocutory appeal. Bruno's response is to argue that the issue of the partial summary judgment decision was raised in her notice of appeal, and that the 54(b) certificate was issued by the district court, and continues to defend her presence on the Gilberts and Alford properties.

Idaho Rule of Civil Procedure 54(b) permits a court, in its discretion, to certify a partial judgment as final so that the decision may be appealed.

> In order for a partial judgment to be certified as final and appealable under I.R.C.P. 54(b), the order granting partial judgment must finally resolve one or more of the claims between the parties. *Toney v. Coeur d'Alene School Dist. No. 271*, 117 Idaho 785, 786, 792 P.2d 350, 351 (1990). If it does not, it is error for a trial court to certify any interlocutory order as final under I.R.C.P. 54(b). *Id.*, *see also Rife v. Long*, 127 Idaho 841, 845, 908 P.2d 143, 147 (1995). The purpose of Rule 54(b) is to avoid piecemeal appeals.

*Brinkmeyer v. Brinkmeyer*, 135 Idaho 596, 599, 21 P.3d 918, 921 (2001).

The district court's partial summary judgment decision on the trespass claims is not properly before this Court to review because the district court did not certify this issue as final under IRCP 54(b). First, Bruno did not ask for this particular decision to be certified, and clearly represented to the district court below that the only decisions she sought to have certified were the judgment following the bench trial and the order denying reconsideration. The only issues decided at the bench trial involved the easement claims. Bruno's memorandum in support of her motion to certify focused on the easement claims that had been resolved by the district court and distinguished those claims from the trespass claims which remained to be tried by a jury. Bruno specifically asked that the district court certify its Findings of Fact, Conclusions of Law, and Order entered after the bench trial, as well as its order on her motion for reconsideration. No such request exists as to the district court's decision denying partial summary judgment.

Further, the district court's order certifying the bench trial decision as final *only* addressed claims raised by Bruno against the Gilberts and Alford. In granting Bruno's motion, the district court observed:

> In this case, *the easement claims have been fully adjudicated*, leaving only Defendants' claims for trespass, which will be tried before a jury. Given the current pandemic situation, a jury trial is not likely to be heard until sometime after February 2021. Additionally[,] determination of the trespass issues do not require determination of the easement issues appealed. For these reasons, entry of final judgment on *Plaintiffs' claims against Defendants* is appropriate.

Even more to the point is the subsequent Second Amended Judgment entered by the district court, which listed the disposition of claims before ending with the unequivocal statement: "This Judgment does not affect the remaining claims still pending before this Court."

Assuming *arguendo* that entry of the Rule 54(b) certificate permitted Bruno to raise issues relating to the trespass claims—and it does not—the order Bruno seeks to alter on appeal is the order denying partial summary judgment. This order did not "finally resolve one or more of the claims between some or all of the parties." *See Brinkmeyer*, 135 Idaho at 599, 21 P.3d at 921. The order stated that there were issues of genuine fact to be resolved by a jury on the trespass claims. This is not an order that the district court *could* certify as final under IRCP 54(b) without abusing its discretion.[5] *Brinkmeyer*, 135 Idaho at 599, 21 P.3d at 921.

---

[5] This may be an order that could have been permitted by proper exercise of Idaho Appellate Rule 12, which provides that the Supreme Court may grant permission to appeal an interlocutory order "not otherwise appealable

As a final note, we do not condone Bruno's counsel's attempt to raise issues related to the civil trespass claims on appeal, despite clear authority preventing her from doing so. Even if she were not procedurally barred from raising the civil trespass issues, the doctrine of judicial estoppel would apply here. "Judicial estoppel 'precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.'" *Heinze v. Bauer*, 145 Idaho 232, 235, 178 P.3d 597, 600 (2008) (quoting *McKay v. Owens*, 130 Idaho 148, 152, 937 P.2d 1222, 1226 (1997)). "Judicial estoppel is intended to protect against a litigant playing fast and loose with the courts." *McKay*, 130 Idaho at 152, 937 P.2d at 1226 (quoting *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 601 (9th Cir. 1996)). Bruno's attorney contends that because she listed issues related to the trespass claims in her Notice of Appeal and because a 54(b) certificate had been issued, Alford and the Gilberts had an opportunity to object and did not do so. However, these arguments on appeal are inconsistent with the representations made to the district court below in requesting a 54(b) certificate—that she wished to appeal the easement-related issues and that appeal of the easement issues would not affect determination of the trespass issues—and based on those representations she was granted a Rule 54(b) certificate on the bench trial decision. Bruno's counsel now asks this Court to review a denial of partial summary judgment, seeking the advantage of having *all* the claims in the case resolved on appeal and reasoning that the 54(b) certificate allows her to do so. We reject this attempt to expand the district court's 54(b) certificate. Not only is there a bar to appealing a decision which was not certified as a final judgment for appeal under Rule 54(b), Bruno's attorney has shifted her position with respect to its certification in the first place and should not obtain any advantage for doing so. As we note below, this portion of the appeal merits an award of attorney fees against Bruno's attorney (not Bruno) for raising these issues frivolously, unreasonably, and without basis in law.

**E. We affirm the district court's award of costs.**

After the bench trial, the Gilberts and Alford moved for costs and attorney fees. The district court awarded costs, but not attorney fees to the Gilberts and Alford; however, in doing so the district court made no explicit determination as to who had prevailed in the action.

---

under these rules[.]" *See* I.A.R. 12(a). However, this Court has stated clearly that "[a]n order denying a motion for summary judgment is not an appealable order itself[.]" *Aardema v. U.S. Dairy Sys., Inc.*, 147 Idaho 785, 789, 215 P.3d 505, 509 (2009) (quoting *Grover v. Wadsworth*, 147 Idaho 60, 66, 205 P.3d 1196, 1202 (2009)).

On appeal, Bruno argues that it was an abuse of discretion for the district court to award costs because, considering the prevailing party factors, there was no prevailing party below. Bruno argues that her prescriptive easement was affirmed as to the pipes on Gilberts' property, and that Gilberts' counterclaim of slander of title had been dismissed at summary judgment. Bruno also argues that Alford's trespass claim is yet unheard and should not factor into the analysis, and that Alford was never granted any of the declaratory relief he sought.

The Gilberts respond, arguing that the district court did not abuse its discretion because "it is hard to see how the Gilberts [cannot] be seen as a prevailing party." The Gilberts argue that Bruno's claims for a prescriptive easement were rejected, and therefore "[c]learly, the Gilberts soundly prevailed on the most central and important issues in this case."

Alford also argues that it is illogical to view him as anything other than a prevailing party. Alford argues that while Bruno may have partially prevailed against the Gilberts, Bruno certainly did not prevail against Alford. Alford contends that his request for declaratory relief was to confirm that Bruno had no right to use Alford's property or driveway, and that the district court's decision made that clear, even if it did not contain a formal decree to that effect.

A prevailing party in an action is entitled to certain costs as a matter of right and may, in some cases, also be awarded discretionary costs and attorney fees. I.R.C.P. 54(d)(1).

> In determining which party to an action is a prevailing party and entitled to costs, the trial court shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties. The trial court in its sound discretion may determine that a party to an action prevailed in part and did not prevail in part, and upon so finding may apportion the costs between and among the parties in a fair and equitable manner after considering all of the issues and claims involved in the action and the resultant judgment or judgments obtained.

*Id.*

When there are claims and counterclaims between the parties, "the court determines who prevailed 'in the action.' That is, the prevailing party question is examined and determined from an overall view, not a claim-by-claim analysis." *Jorgensen*, 148 Idaho at 538, 224 P.3d at 1127 (quoting *Eighteen Mile Ranch, L.L.C., v. Nord Excavating & Paving, Inc.*, 141 Idaho 716, 719, 117 P.3d 130, 133 (2005)). However, this Court has observed that where a case has been bifurcated and a partial judgment has been issued on some of the claims, an award of attorney fees and costs is not premature, although it "might well be preferable in bifurcated cases for the district court to wait to rule on motions for costs and attorney fees until the entire action has

concluded." *See Caldwell v. Cometto*, 151 Idaho 34, 40 n.7, 253 P.3d 708, 714 n.7 (2011) ("It is true that an action has not been fully adjudicated until all the claims and defenses at issue have been resolved, but I.R.C.P. 54(d)(1)(B) also provides that a court may award fees when it has issued a 'final judgment.' Because a Rule 54(b) partial judgment is defined as a 'final judgment' under I.R.C.P. 54(a), a court may issue fees pertaining to that portion of the action.").

Further,

"[t]he role of this Court, in determining if the district court reached its decision by an exercise of reason, is to review the process the district court engaged in to make its decision." *Palmer v. Spain*, 138 Idaho 798, 801–02, 69 P.3d 1059, 1062– 63 (2003) (citing *Sheridan v. St. Lukes Reg'l. Med. Ctr.*, 135 Idaho 775, 781, 25 P.3d 88, 94 (2001)). In order for this Court to perform this function properly, "the district court must disclose its reasoning. . . unless its reasoning is obvious from the record." *Palmer*, 138 Idaho at 802, 69 P.3d at 1063 (citations omitted).

*In re Prefiling Ord. Declaring Vexatious Litigant*, 164 Idaho 771, 777, 435 P.3d 1091, 1097 (2019). In determining whether an abuse of discretion has occurred, this Court examines "[w]hether the [district] court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 873, 421 P.3d 187, 204 (2018).

The district court did not abuse its discretion in awarding costs to Alford and the Gilberts. The district court acknowledged its discretion in awarding costs. Although the district court did not explicitly find that Alford and the Gilberts were the prevailing parties, it is clear from the record and the district court's order on costs and fees that the district court viewed Alford and the Gilberts as prevailing parties, awarding them costs "as a matter of right." It is also evident from the district court's questions about Idaho Code section 12-121 during the motion hearing on attorney fees that it was inclined to find that Alford and the Gilberts had prevailed in the first portion of the bifurcated claims. Further, this determination is within the outer boundaries of its discretion as well as being consistent with the applicable legal standards. Bruno did not prevail in increasing the scope of the express easement, nor did she prevail in establishing a prescriptive easement over the switchback or the Gilberts' driveway. Alford and the Gilberts successfully defended these claims, and consequently it was not an abuse of discretion for the district court to

conclude that Alford and the Gilberts were the prevailing parties in the equitable portion of this bifurcated case.[6]

**F. We affirm the district court's decision declining to award attorney fees to Alford under Idaho Code section 12-121.**

Below, Alford moved for attorney fees, in part relying on Idaho Code section 12-121. The district court denied him an award of attorney fees, determining that "the case was not brought, pursued, or defended frivolously without basis in law or fact."

On appeal, Alford argues that the district court abused its discretion in denying attorney fees under Idaho Code section 12-121. Alford contends that "the facts and written findings of this case do not establish sufficient reasoning and rationale for why the district court denied fees under Idaho Code section 12-121." Alford argues that the district court also abused its discretion when it failed to analyze any of the factors in IRCP 54(e)(3). In response, Bruno argues that Rule 54 only requires findings in writing when attorney fees are awarded, but not when an award is denied. Alford counters, arguing that the district court provided no "explanation or analysis of why the court finds the action against *Alford* was not brought, pursued, or defended frivolously[.]" Alford continues to attack Bruno's claims as illegitimate and not based on reasonable grounds.

Under Idaho Code section 12-121, a "judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121; *see also* I.R.C.P. 54(e)(2). "If the court grants attorney fees to a party or parties in a civil action it must consider" several factors as listed in the Rule. *See* I.R.C.P. 54(e)(3).

We conclude that the district court did not abuse its discretion in declining to award attorney fees under Idaho Code section 12-121. Bruno presented legitimate issues to the district court in this case. *See Sec. Inv. Fund LLC*, 165 Idaho at 290, 443 P.3d at 1046. Further, Alford's argument about the Rule 54(e)(3) factors would read requirements into Rule 54(e) and Idaho Code section 12-121 that do not exist. We reaffirm that analysis of the Rule 54(e)(3) factors is mandatory "[i]f the court grants attorney fees to a party or parties in a civil action[.]" I.R.C.P.

---

[6] The record in this case leaves no doubt that the district court had concluded that Alford and the Gilberts were the prevailing parties. Nevertheless, all cases are not as clear as this one. It remains the best practice for trial judges to expressly make such findings, rather than leaving it for the appellate courts to divine their intent.

54(e)(3). These factors are required to be considered in determining whether the requested attorney fees are *reasonable*. If attorney fees are *not* awarded at all, this inquiry is not required.

**G. The district court did not abuse its discretion in failing to address Idaho Code section 12-120 as grounds for an award of attorney fees to Alford.**

Below, Alford moved for attorney fees, citing Idaho Code sections 12-120(1) and 12-120(2). Alford argued that "[n]one of the pleadings state amounts over $35,000." In denying an award of attorney fees to both the Gilberts and Alford, the district court did not address Idaho Code section 12-120.

In Alford's cross-appeal, he argues that the district court's failure to address the alternate grounds for an award of attorney fees was an abuse of discretion. Bruno's response is that Alford never qualified for attorney fees under Idaho Code sections 12-120(1) and 12-120(2) because Alford did not specifically plead damages limited at $35,000, and did not specifically reference Idaho Code section 12-120 in his answer or counterclaim. Alford counters, arguing that the district court's failure to address these grounds and to analyze the Rule 54(e)(3) factors was an abuse of discretion.

Idaho Code section 12-120 allows for an award of attorney fees in certain civil actions. Subsection (1) requires that this action be one "where the amount pleaded is thirty-five thousand dollars ($35,000) or less." I.C. § 12-120(1). As noted above,

> "[t]he role of this Court, in determining if the district court reached its decision by an exercise of reason, is to review the process the district court engaged in to make its decision." *Palmer*[, 138 Idaho at 801–02, 69 P.3d at 1062–63 (citing *Sheridan*, 135 Idaho at 781, 25 P.3d at 94)]. In order for this Court to perform this function properly, "the district court must disclose its reasoning . . . unless its reasoning is obvious from the record." *Palmer*, 138 Idaho at 802, 69 P.3d at 1063 (citations omitted).

*In re Prefiling Ord. Declaring Vexatious Litigant*, 164 Idaho at 777, 435 P.3d at 1097. An abuse of discretion may be found when a district court fails to rule on a motion with no indication as to why. *See Dawson v. Cheyovich Fam. Tr.*, 149 Idaho 375, 380, 234 P.3d 699, 704 (2010).

The district court did not abuse its discretion in not addressing Idaho Code section 12-120 in its decision on attorney fees. This is because the district court concluded this section did not apply. When Idaho Code section 12-120 was referenced during oral argument on attorney fees, the district court noted, "Well, that [section] doesn't apply to this Court's jurisdiction to determine property rights." The district court then did not address Idaho Code section 12-120 in its decision denying attorney fees. The district court's reasoning can be garnered from the record:

the easement claims adjudicated by the district court below did not involve monetary claims. They were equitable in nature. The only resolution reached was on the equitable claims, i.e., the existence of an easement, and did not involve pecuniary claims. *See, e.g.*, *Jerry J. Joseph C.L.U. Ins. Assocs., Inc. v. Vaught*, 117 Idaho 555, 558, 789 P.2d 1146, 1149 (Ct. App. 1990) (rejecting a "bootstrapping" argument where equitable claims regarding fencing and easement were the gravamen of the action, despite assertion of incidental irrigation assessments in the amount of $604). Accordingly, the district court appropriately declined to address Alford's request for attorney fees under Idaho Code section 12-120 because there were no monetary claims involved in the bifurcated bench trial, and this was therefore not an abuse of discretion.

## H. Attorney fees are awarded to the Gilberts and Alford as prevailing parties on the civil trespass appeal because Bruno's attorney pursued it frivolously, unreasonably, and without foundation.

Alford requests costs and attorney fees to the extent he is a prevailing party. He cites Idaho Code section 12-121, as well as Idaho Appellate Rules (IAR) 40 and 41, as grounds for his request. Alford argues that he has prevailed on all issues in the case against him. The Gilberts request costs and attorney fees on appeal, citing only IAR 40 and 41(a).

With some exceptions based on the type of case, "costs shall be allowed as a matter of course to the prevailing party unless otherwise provided by law or order of the Court." I.A.R. 40. Idaho Code section 12-121 provides that "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. Because we have affirmed the judgment of the district court, Alford and the Gilberts have prevailed on appeal. Accordingly, we award costs to them as a matter of right.

As to the issue of attorney fees on appeal, we conclude that Bruno's prescriptive and express easement appeals were not brought frivolously, unreasonably, or without foundation. They involved complex factual and legal matters that merited appellate review. We therefore decline to award attorney fees to Alford and the Gilberts on these claims. However, we do not arrive at the same conclusion regarding Bruno's appeal of the denial of partial summary judgment as to the civil trespass claims against her. There was no legal foundation for this portion of her appeal. The partial summary judgment decision was not certified under Rule 54(b), nor did Bruno request that it be certified. Bruno's attorney conceded during oral argument that there was no certification of this issue. We recognize that attorneys may have an incentive to

29

include as many issues on appeal as possible in hopes of resolving issues before further proceedings, but this portion of Bruno's appeal was raised without a reasonable basis and constituted a waste of the Court's time, not to mention that of opposing counsel and the resulting expense to Alford and the Gilberts.

However, "[r]ather than awarding attorney fees under Idaho Code section 12-121, we find it more appropriate to award attorney fees pursuant to Idaho Appellate Rule 11.2 as sanctions" against Bruno's counsel. *Bergeman v. Select Portfolio Servicing*, 164 Idaho 498, 503, 432 P.3d 47, 52 (2018).

> The Rule permits this Court, acting on its own motion, to impose "an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the notice of appeal, petition, motion, brief or other document including a reasonable attorney's fee." Sanctions imposed under the Rule may be imposed against a party, its attorney, or both.

*Id.* (quoting I.A.R. 11.2(a)). Under Rule 11.2, sanctions are proper "when a party or attorney violates either (a) the frivolous filings clause or (b) the improper purpose clause." *Hartgrave v. City of Twin Falls*, 163 Idaho 347, 357, 413 P.3d 747, 757 (2018) (citations omitted). The frivolous filings clause of Rule 11.2 applies under the same circumstances warranting an award under Idaho Code section 12-121. *Bergeman*, 164 Idaho at 503, 432 P.3d at 52.

Accordingly, we award attorney fees to Alford and the Gilberts against Bruno's attorney for their time attributable to defending against Bruno's appeal of the partial summary judgment decision on the civil trespass claims. Counsel for Bruno knew that the district court had not certified the question for appeal. In fact, she drafted and submitted the proposed Second Amended Judgment which held: "This Judgment does not affect the remaining claims still pending before this Court." Nevertheless, counsel for Bruno brazenly sought to have this Court address an issue that awaited trial in the second phase of these proceedings. Bruno's lawyer's efforts were frivolous, unreasonable, and without foundation. To the extent it might be said that Bruno should be held responsible for the attorney fees because she agreed with her attorney bringing this issue before the Court, we disagree. Even if the client agreed, this is an appeal the lawyer should never have brought. The lion's share of the blame is borne by the attorney under these circumstances, not the client. As a result, we order Bruno's attorney to pay the attorney fees incurred by Alford and the Gilberts in responding to this particular portion of the appeal. *Bergeman*, 164 Idaho at 503, 432 P.3d at 52.

## IV.     CONCLUSION

For the forgoing reasons, we affirm the judgment of the district court. We deny Alford's cross-appeal. We award costs to Alford and the Gilberts as prevailing parties. We also award Alford and the Gilberts attorney fees attributable to defending against Bruno's civil trespass appeal. We also conclude Bruno's attorney shall be responsible for the attorney fees awarded.

Chief Justice BEVAN, Justices BRODY, MOELLER and HORTON, J. Pro Tem, CONCUR.